## LESESNE & WELLS v. YOUNG.

1. A statute should be construed according to the true intention of the law-maker, and such intention must be ascertained, if possible, from the words used and in their ordinary and proper sense. Where the meaning of a word used is indicated by the terms of the act, there is no necessity to look for extraneous circumstances in aid of construction.

2. An act to regulate the rates of wharfage and storage, passed in 1807, fixed the following rates and sums "and no greater * * for wharfage of ships or vessels, or for landing, weighing, and storing of the articles of rice and cotton upon the wharves in Charleston, to wit: * * * For landing every bale or case of cotton, four cents per bale or case ; * * for shipping every bale or case of cotton, four cents per bale or case." *Held*, that the purpose of the act was to fix proper charges to be allowed the wharf owner for the use of his wharf in loading and unloading—for putting cotton on board ship to be transported, and taking cotton from a ship and putting it on the wharf. The word "landing" in this act did not include the deposit on the wharf of cotton from a lighter boat or dray ; and changes in modes of transportation since 1807 cannot enlarge the meaning of this word.

3. For cotton taken from a dray and placed upon the wharf and then shipped by vessel to another port, the wharf owner may charge under this act only four cents per bale ; four cents for shipping, and nothing for landing, as there was no landing.

4. Where the legislature has fixed charges for wharfage, the courts cannot consider whether the rates so fixed are reasonable or excessive.

MR. JUSTICE McIVER, *dissenting.*

Before HUDSON, J., Charleston, November, 1889.

This was an action by Edward L. Wells and D. E. Huger Smith, copartners, doing business as Lesesne & Wells, against Thomas Young, commenced October 21, 1887. The charge of the Circuit Judge to the jury was as follows :

It becomes my duty in the first place to explain to you the nature of this action, the question and cause of the action and its object, and I am not a little perplexed in so doing; but after a careful consideration of the complaint, I would instruct you that this is not an action to recover money had and received by the defendant for the use of the plaintiff; it is not an action to recover back wharfage illegally exacted, but it is an action sounding

in damages occasioned by an alleged tort, viz., the wrongful acts
of the defendant in obstructing the shipment of cotton by the
plaintiffs, an allegation of actual trespass in so doing.    Taking
the complaint altogether, I so construe it, namely, that it is an
action of alleged tort, sounding in damages, and not for the re-
covery of money had and received—nor for a debt due on con-
tract violated—nor for the recovery of wharfage fees and charges
paid under protest.

It is alleged that unlawful fees were exacted, and it becomes
therefore necessary that I should pass upon that question : in the
first instance, whether the obstruction and the malicious interrup-
tion of the plaintiffs' business  was caused by exactions of unlaw-
ful wharfage charges.    The only act of the legislature extant on
the subject is the act of 1807.    Whether illegal charges were
demanded in this case depends on  the interpretation of the word
"landing," and it becomes my duty, as I conceive it, to interpret
that word to you.    I would be much pleased if it could be left to
you under the evidence in this case, but I conceive it is my duty
to give interpretation to that word.

In order to interpret the language of this act, we must take
into consideration that it is dated 1807, about 80 years or more
before the bringing of this action.    We must take into considera-
tion the condition of the country at that time; the modes of trans-
portation of produce; the modes of reaching the wharves of this sea-
port, and depositing upon the wharves the produce of the country,
namely, cotton, for purposes of shipment. We must take into con-
sideration the fact that there were no railroads in those days, and
both rice and cotton were brought to the city mostly by means of
nature's highway, water transportation ; that from these vessels
bringing produce here, the produce was landed on the wharves
for purposes of shipment and afterwards shipped.    The object of
the act was to give the right to the owners of the wharves of
demanding compensation for the duty of receiving that produce
on the wharf for the purposes of shipment, caring for it whilst
there under the responsibility of the wharf owner, and the labor
and trouble and expense of putting it aboard the vessel to be
shipped ; that is the object of the act, and the language of the act
we must interpret by the light of the then surrounding circum-

stances, and in the action now for violating this act, we must also take into consideration any of the altered methods of transporting produce and the delivery of the produce for purposes of shipment.

Technically speaking, landing means the delivery on the land of an article from aboard a vessel on the water, a disembarkation so as it were, a transfer from the water to land; there is no doubt about that, and there is no doubt that the legislature at that time had in contemplation that meaning, and the question arises now whether the word "landing" can be applied to any other mode of depositing goods on the wharves for purposes of shipment. The object of the act was to compensate the wharf owner for the expense and trouble and labor necessary to receive an article, to transfer it from the vessel bringing it there, to put it on the wharf, and if it was brought there and put there for purposes of shipment, then the caring for it and the consequent transfer of the same to the vessel by which it was to be shipped.

So far as the evidence in the case goes, I do not remember any testimony in the case that four cents per bale has not been charged for receiving cotton from the drays and other vehicles, brought and deposited on the wharves for purposes of shipment. You must be the judges of the evidence, however, but in the interpretation of this act I have the responsibility. It is in evidence that a charge of four cents has been made, and is now being made by the owners of the wharves for the labor and expense of receiving cotton on the wharf from any vehicle of transportation, whether by water or land, for purposes of shipment, or for other purposes. That, so far as I can understand the testimony, has been the custom and practice, and is now the custom and practice. In other words, we are to take it that that has been the interpretation of this act by the wharf owners of this seaport from the time of the passage of the act up to the present day, and that the charge has been paid. In some cases, however, in order to encourage patronage of the wharves, there has been a rebate. The question is, therefore, whether the wharf owner has a right to charge the shipper for cotton he delivers on the wharves from drays, railway cars, or any other inland vehicle of transpor-

tation for purposes of shipment; if so, then there was no illegal charge in this case so far as the evidence goes.

Whilst I am exercised about the true interpretation of this act, yet, taking the act, the date of its passage, the object of the provision here, namely, the compensation to the wharf owners for the labor and expense of receiving and shipping this article of commerce, taking into consideration that the article is one of export and not import, and was then; also taking into consideration the fact that subsequent changes in the mode of transportation from the interior to the city have been made, I will instruct you that the wharf owner had the right as a compensation to him for receiving the bale of cotton here from a lighter, or flat boat, or a dray, on to his wharf for the purpose of shipment, he had a right to charge 4 cents per bale for that trouble, and he has the right to charge 4 cents for the trouble and expense of putting it aboard a vessel for shipment. That is my interpretation of this act, and that interpretation you will have to take; if it is a wrong interpretation, there is a higher tribunal to correct me.

You will therefore eliminate from this case all charges of illegality in the charging of eight cents a bale for wharfage, inasmuch as under the term wharfage is included the receiving, caring for, and shipping articles of produce. I have charged you he has not sued to recover back any illegal ·charge, but that he has sued for damages actual and exemplary, namely, $50,000 for the obstruction to his business.  *  *  *

(By Mr. Barker.) I would ask your honor to charge that the charge of layage was unlawful and not in accordance with the practice of wharf rates, and that also storage was not in accordance with approved custom and practice of wharf owners in Charleston, and was illegal, and I ask your honor ·to charge specifically that the charge of 8 cents on cotton shipped by Lesesne & Wells in this case over the wharves of the defendant was not a lawful charge. I also ask your honor to note the fact judicially that in 1807, and from that to 1838, all the cotton, or most of the cotton, that came to Charleston came in wagons along the roads, and was deposited on the wharves from these wagons, and no cotton came by boats until after the Santee Canal was built,

(By the Court.) The request which you make orally at the end

of my charge, I cannot pass upon. I have charged the jury very clearly and distinctly upon the very matters you request me to charge. I have charged them that this charge of eight cents per bale wharfage is not in violation of this act, and so far as the history of the country is concerned, the building of the Santee Canal, when wagons began to haul, and when the railroads began to haul, those are matters which the jury can take notice of as well as myself. I only call the attention of the jury to the date of this act, and the condition of the country and the changes which have taken place in the methods of transportation since. I think I have charged on all the points you have asked, and I don't see any allegation in the complaint about layage, and I do not remember anything in the evidence about layage being charged, but, of course, that is a question for the jury; I cannot import into the complaint what is not there.

Verdict was for defendant, and plaintiffs appealed.

*Messrs. Barker, Gilliland & Fitzsimons,* for appellants.

*Messrs. Mitchell & Smith,* contra.

December 11, 1890. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. As stated by the plaintiffs, this was an action for damages against the defendant for alleged wrongful acts as wharf owner and wharfinger in the port and harbor of Charleston, in illegally and with malicious intent to injure plaintiffs "demanding from plaintiffs, merchants in the city of Charleston, engaged in purchasing and shipping cotton to correspondents resident abroad, payment of eight (8) cents per bale wharfage on all cotton shipped by them over wharves controlled by defendant, and after the sum of four cents per bale, which plaintiffs claim to be the lawful charge for such wharfage, had been by them tendered to defendant, and he had refused to receive it; for interfering with and wantonly obstructing the business of plaintiffs in the use of said wharves, until they were compelled, in order to carry on their business, to pay under protest the unlawful charge of eight cents per bale so exacted," &c. * * * Plaintiffs further

alleged that their business had been injuriously obstructed, caus-
ing them loss, for which loss, and for the malicious and unlawful
conduct, they claimed damages, &c.

The defendant in his answer admits that he demanded payment
of his bills for wharfage from plaintiffs at eight cents per bale for
all cotton of the plaintiffs passed over the wharves leased by him
and already shipped, and that he had on a certain day forbid the
removal of certain cotton without the payment of certain charges
thereon, for which he claimed a lien.    Defendant took issue as
to all the other matters in the complaint, including the claim that
eight (8) cents per bale on cotton shipped over defendant's
wharves was an unlawful charge, and that four (4) cents per bale
on such cotton was a lawful charge; also, that the charge of eight
cents layage and eight cents storage as made were unlawful
charges, &c.

There was testimony tending to show that the defendant had
charged the plaintiffs eight cents per bale for all their cotton
passed over his wharves; and that in consequence of the plain-
tiffs' refusal to pay eight cents per bale wharfage, their business
had been to some extent "obstructed."    The principal question
in this case, however, was what amount as fees the wharfinger
was entitled by law to charge for allowing cotton bales to be
shipped over his wharves; and that depends upon the proper
construction of the act of 1807, which is as follows, viz.: "An
act to amend an act for amending an act, entitled an act for regu-
lating and ascertaing the rates of wharfage of ships and merchan-
dise; and also for ascertaining the rates of storage in Charles-
ton, and for repealing the first clause of said act, or any other
acts repugnant thereto.

"*Whereas* it is proper and expedient to alter and amend an
act regulating and ascertaining the rates of wharfage and storage
in Charleston, passed the 29th day of March, 1778;

"1. *Be it therefore enacted*, that immediately from and after
the passing of this act, the following rates and sums respectively
shall be paid, and no greater shall be demanded or exacted by
owners of wharves or any other persons for wharfage of ships or
vessels, or for landing, weighing, and storing of the articles of
rice and cotton upon the wharves in Charleston, to wit: for the

landing of every barrel of rice, four cents per barrel; for weighing every barrel of rice, six cents per barrel; for shipping every barrel of rice, four cents per barrel; for storing every barrel of rice, &c., &c.; for landing every bale or case of cotton, four cents per bale or case; for weighing every bale or case of cotton, six cents per bale or case; for shipping every bale or case of cotton, four cents per bale or case; for storing every bale or case of cotton, eight cents per bale or case, for the first and last weeks, and four cents per week for each intermediate week," repealing all other inconsistent acts, &c., &c.

The learned Circuit Judge seemed to be much in doubt as to the true interpretation of this act, but he construed it as authorizing the charges of wharfage complained of, that is to say, four cents a bale for "landing," and an additional four cents for "shipping" the same cotton, making the wharfage for "shipping" cotton, not four cents as expressed in the act, but eight cents per bale. Among other things, he charged the jury as follows: "In order to interpret the language of this act, we must take into consideration that it was dated 1807, about eighty years or more before the bringing of this action. We must take into consideration the condition of the country at that time; the modes of transportation of produce; the modes of reaching the wharves of this seaport, and depositing upon the wharves the produce of the country, namely, cotton, for purposes of shipment. We must take into consideration the fact that there were no railroads in those days, and both rice and cotton were brought to the city mostly by means of nature's highway, water-transportation; that from those vessels bringing produce here, the produce was landed on the wharves for purposes of shipment and afterwards shipped. The object of the act was to give the right to the owners of the wharves of demanding compensation for the duty of receiving that produce on the wharf for the purposes of shipment, caring for it while under the responsibility of the wharf owner, and the labor and trouble and expense of putting it aboard the vessel to be shipped. * * *

"It is in evidence that a charge of four cents has been made and is now being made by the owners of the wharves for the labor and expense of receiving cotton on the wharf from any vehicle of

transportation, whether by water or land, for purposes of ship-
ment or for other purposes. That, so far as I can understand
the testimony, has been the custom and the practice, and is now
the custom and practice; in other words, we are to take it that
has been the interpretation of this act by the wharf owners of this
port from the time of the passage of this act up to the present
day, and that the charges have been paid. In some instances,
however, in order to encourge patronage of the wharves, there
has been a rebate of four cents per bale. The question is there-
fore, whether the wharf owner has the right to charge the ship-
per for cotton he delivers on the wharves from drays, railway
cars, or any other inland vehicle of transportation for purposes
of shipment; if so, then there was no illegal charge in this case,
so far as the evidence goes.

"Whilst I am exercised about the true interpretation of the
act, yet, taking the date of its passage, the object of the provi-
sions, namely, the compensation to the wharf owners for the labor
and expense for receiving and shipping this article of commerce;
taking into consideration that the article is one of export and not
of import, and was then; taking into consideration the fact that
the subsequent changes in the mode of transportation from the
interior to the city have been made, I will instruct you that the
wharf owner had the right, as a compensation to him for receiv-
ing the bale of cotton here from a lighter, or flat boat, or a dray
on his wharf for the purpose of shipment, he had a right to charge
4 cents for that trouble, and he had a right to charge 4 cents for
the trouble and expense of putting it aboard a vessel for shipment.
That is my interpretation of the act, and that interpretation you
will have to take," &c.

Under the charge, the jury found a verdict for the defendant,
and the plaintiffs appeal to this court, filing twenty-nine excep-
tions. They are long, and being all printed in the "Brief," need
not be restated here. From the view which the court takes, it
will not be necessary to consider now any of them except those
which charge error on the part of the judge in his construction
of the act of 1807.

The object of all construction is to ascertain the true intention
of the law maker; but, if possible, that should be done from the

words used, and in their ordinary and proper sense. As Dwarris puts it clearly : "In the exposition of a statute, the intention of the legislature may be discovered from different signs ; but as a leading clue to the construction to be made, it is to be collected from the words used. And while, as before stated, it is a fundamental maxim that effect ought to be given to the intention and object of the framers, it must now be added, in order to give such rule its full signification, that it must be such an intention as the legislature have used fit words to express. 'Although the spirit of the instrument,' says Story, 'is to be regarded no less than its letter, yet the spirit is to be collected from the letter.' It would be dangerous in the extreme to infer from the extrinsic circumstances that a case for which the words expressly provide, shall be exempted from their operation," &c. Dwarris on Statutes, §§ 556, 561.

Taking this for our guide, and reading the statute (1807) carefully, we cannot think there is any serious ambiguity in it, or much need of construction. A wharf is defined to be "a firm landing place built by the side of the water, or extending into it, for the convenience of loading and unloading ships." There is in commerce the double operation of importing and exporting articles of trade. The purpose of the act was to fix proper charges to be allowed the wharfinger for the use of his wharf for certain acts named, including, as matter of course, the use of the wharf in possible importation as well as in exportation, "in loading and unloading vessels." This being clearly understood, the statute, as to charges for the use of the wharf, in regard to cotton are as follows : "For landing every bale or case of cotton, four cents ; for weighing every bale or case of cotton, six cents ; for shipping every bale or case of cotton, four cents ; for storing every bale or case of cotton," &c.

Now, here are four separate and distinct services to be rendered by the wharfinger, for each of which a particular charge is allowed. No question is made as to the meaning of "weighing" or "storing." Then what was meant by "landing" and "shipping" ? It would seem that there should be scarcely less doubt as to them. Worcester says "landing" is a "coming to land ; act of going or putting on shore, as from a vessel ;" and "shipping"

is "to send or transport in a ship, as to ship goods." Applied here in their proper sense, there can be little doubt that the word "shipping" was intended to express the idea of putting the cotton on board of a ship to be transported; and "landing" to express the idea of taking the cotton from the ship and putting it on land; the two operations being the exact opposite of each other; "shipping," and, as we might say, unshipping. Thus understood, it seems to us impossible that "landing" can be construed only as a part of "shipping," or that there is both a "landing" and "shipping," for which the act allows charges in every transaction of shipping the same cotton.

But it is earnestly contended that, cotton being only an article of export and not of import, there was really no necessity for the act to use the word "landing" in its ordinary sense of putting on land; and inasmuch as the act was passed eighty years ago, when, as alleged, most of the cotton which reached Charleston, was "landed" on the wharves from boats, we may infer that the word "landing" in the act meant such landing from the lighter boat; and further, that the modes of transportation having in the mean time changed, we may now substitute for such "landing any delivery at the wharf for shipment, whether that delivery be from drays, railroad cars, or any other vehicle of inland transportation, and therefore the wharf owner has the right, as a compensation to him for receiving the bale of cotton here from a lighter or flat boat or a dray on his wharf for the purpose of shipment, to charge four cents per bale for that trouble and he has the right to charge four cents for the trouble and expense of putting it aboard a vessel for shipment," &c.

We cannot concur in this uncertain and conjectural construction for several reasons. We do not think that was the intention of the legislature. In the first place, the act on its face indicates that "landing" and "shipping" are two separate and distinct things, to be done, not by the owner, but by the wharfinger. There is not in the act the remotest hint that they could be different parts of the same transaction. To say nothing of the want of satisfactory proof as to some of the circumstances relied on to change the plain meaning of the word "landing," and especially as to the alleged custom at one time of landing cotton on the

wharves "by boat for shipment," we cannot doubt that the act was intended to fix charges for the use of the wharf in possible importation, as well as in exportation of cotton, as it certainly did in respect to rice.  As we understand, it has always been the practice, both in England and this State, to give wharfage for the incoming as well as outgoing goods and merchandise.  As, for example, our old act of 1778, to which, by its title, the act under consideration is declared to be "an amendment," enacted, among other things, as follows : "The following rates and sums respectively shall be paid, and no greater shall be allowed or exacted by owners of wharves or any other persons, for wharfage of ships, vessels, and merchandise, imported and exported." In the same act there is also a class of articles, under the heading, "wharfage of goods landed, or laden from one ship to another."  And also an item "For every other species of goods, the same rates and allowances as for landing."  So that the very case to which the word "landing" refers, is found in the act, and in order to give it application there is no necessity to look for extraneous circumstances outside of the act itself.

But in order to reach the construction contended for by the respondent, it is necessary to change the plain meaning of the word "landing" by the force of extraneous circumstances in several particulars : first, in construing it to mean landing from the lighter boat, instead of from the vessel itself, the latter being the proper statutory meaning, and nothing appearing to authorize the change; and second, in transferring that interpretation to a delivery by a dray from the land.  The words, "For landing every bale or case of cotton," indicate clearly that the movement contemplated was *to* the land, not *from* it; and to be made, not by the owner, but by .the wharfinger, for which service the act gives him a certain fixed compensation.  It seems to us that it would be very strained construction amounting to something like a solecism in terms to hold that the delivery of cotton at the wharf from drays on land, must be. considered as "landing" in the sense of the act, so as to give the wharfinger the four cents per bale for "landing," and also four cents for "shipping," making the charge for "shipping" not four, as the act declares, but eight cents per bale.  We do not understand that the charge

allowed the wharfinger for "shipping" cotton was "for the trouble and expense of putting it on board the vessel," but for the use of his wharf in that transaction. If the legislature had intended to allow him four cents per bale additional for receiving the cotton on the wharf in process of shipment, they would naturally have included it in the general charge for "shipping," and not made it a separate charge "for landing." "The duty of the judge is to adhere to the legal text, and not to travel out of what that expressly or impliedly contains," &c. Dwarris Statutes, 704.

It seems that there has been occasionally what is called "a rebate" of these charges, but whether the compound charge of eight cents per bale, including both "shipping" and "landing," is reasonable or excessive, is not for us to consider. That is a matter exclusively for the legislature. Our province does not extend beyond construing the law as we find it spread upon the statute book.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to the Circuit for a new trial.

Mr. Chief Justice Simpson concurred.

Mr. Justice McIver, *dissenting.* It seems to me that the construction of the term "landing," as used in the act, is the deposit of the article in question on the wharf from the vehicle, whatever may be its character, in which it is transported to the wharf, whether such vehicle reaches the wharf by being propelled either over water or land. Any other view would, it seems to me, render the word "landing" in the act, when applied either to cotton or rice, absolutely useless; for it is well known that, at the time of the passing of the act, neither of those articles ever had been imported, and hence to confine the meaning of the word "landing" to the reception on the wharf of an article of import, would be to attribute to the legislature the absurdity of providing a rate of charge for a use of a wharf which they knew never had been made, and, so far as could then be seen, was never likely to be made.

The fact that there was some testimony in the "Case" tending to show that, at the time of the passage of the act of 1807, cot-

ton was brought to Charleston by small boats for the purpose of shipment abroad, cannot affect the question. For if the legislature prescribed a rate of compensation for the use of a wharf in depositing cotton upon it from boats or vessels reaching such wharf by water, there seems to be no reason why the same rate of compensation should not be allowed for the same use of the wharf in depositing cotton upon it from drays or other vehicles reaching the wharf by land, especially when, as it is well known, the word "landing," like the word "shipping," is often used in a sense different from its original, strict, signification. There is nothing more common than to speak of shipping an article by express, or by railroad, or of landing from the cars.

There can be no doubt that the construction of a wharf and keeping it in repair involves very considerable expense to the wharf owner, and there is as little doubt that such a structure affords great facilities for the receipt and shipment of the produce of the country. It is therefore eminently right and proper that those who avail themselves of such facilities, by the use of the property of another, should make reasonable compensation for such advantages. The object of the act, as I understand it, was, not to prescribe the rate of compensation for *services* rendered the shipper by the wharf owner, but for the *use* of his property, and the act proceeds to specify what shall be the rate of charge for each particular use of the wharf. Thus, there is a separate charge for the use of the wharf for landing goods, and another separate charge for the wharf in shipping the same goods. Hence when a person desiring to ship his cotton, either to some foreign or domestic port, deposits or lands a bale of cotton on a wharf for shipment, he may be required to pay four cents for that use of the wharf, and when he ships the same bale, he may be required to pay an additional sum of four cents for the facility which the wharf affords him in having his cotton placed on board of ship. I suppose there would be quite as much—perhaps more—"wear and tear" of the wharf in using it as a place of deposit or landing of cotton, whether from a boat or dray, as there would be in using the wharf as a means of placing the cotton on board ship, and hence there was manifest propriety in prescribing separate charges for each of these uses.

For these reasons, thus briefly stated, as the pressure of more important official duties forbids a more extended discussion, I am unable to concur in the conclusion reached by the majority of the court.

Judgment reversed.