## SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY *v.* CASSIN, *et al.*, by next friend.

An action for the homicide of a husband or father, alleged to have been occasioned by a physical injury, is not maintainable when it appears that he, while in life, voluntarily settled with the wrong-doer therefor and discharged the latter from all liability for the damages resulting therefrom.

COBB and LEWIS, JJ., dissenting. 1. That a husband, or father, who, in consequence of the negligence of a telephone company, received personal injuries from which he died, had, while in life, received from the company full compensation for the tort to himself, does not defeat the statutory right of the widow, or children, to bring an action against the company for the homicide.

2. In the trial of such an action the plaintiff is entitled to recover the full value of the life of the deceased, irrespective of any amount which may have been paid to him by the company.

Argued December 15, 1899.—Decided August 9, 1900.

Action for damages. Before Judge Reid. City court of Atlanta. May term, 1899.

*Burton Smith, Dorsey, Brewster & Howell*, and *Arthur Heyman*, for plaintiff in error.
*Arnold & Arnold* and *Bray & Arnold*, contra.

SIMMONS, C. J. George Cassin was injured by the plaintiff in error, May 6, 1892. He instituted suit, and, while the action was pending, the company paid him $2,500, taking a receipt stating that it was "in full settlement of my action against said company, now pending in the city court of Atlanta, and also in full settlement of all and any claim for damages on my part, arising out of the injury received by me on or about May 6th, 1892." More than five years after the injury, Cassin died, and his widow thereupon brought suit against the company for his homicide, alleging that his death was caused by the injury, negligently inflicted by the company. She too died, and the suit was then continued in the name of the children. The evidence as to the cause of the death of Cassin was conflicting. One physician testified that it was due to apoplexy, superinduced by Cassin's habit of body, and great mental distress caused by domestic afflictions. Another physician testified that it was caused by the blow from the fall of the telephone cable. The company offered in evidence the receipt given by Cassin in settlement of the damages, and the court excluded it.

The technical rule of the common law, preventing a wife or child from recovering damages for the death of a husband or father, was a great hardship. There was a crying demand for the enactment of a law which would give a cause of action against "the person who would have been liable if death had not ensued," and in 1846 was passed Lord Campbell's act, the first of a series of acts giving such remedy. At the present time, like statutes exist in nearly all of the States of the Union, and none more liberally protect the rights of the wife and child than does that in Georgia. In many of the States, while there is no

limit to the amount of damages recoverable for personal injury, there is a limit in case of death; some providing that the verdict, in case of death, shall not exceed five thousand dollars, and some that it shall not exceed ten thousand dollars.    In others, while there is no statutory limit to the amount of the verdict, the widow or children are only entitled to recover the "pecuniary value" to them of the father or husband; and in arriving at this pecuniary value, the jury must consider and deduct at least what he would have spent on himself.    But so liberal to the wife and children are the provisions of our law, that, when the facts show that the defendant is liable for the death of the husband or father, the jury's verdict is for the "full value of the life of the deceased, without deduction for his necessary and personal expenses"—a provision which "to say the least, is a harsh rule, and must be strictly construed."    *Smith* v. *Hatcher*, 102 *Ga.* 160.    The proposition relied on by defendants in error, if correct, exactly doubles the operation of a statute which has already gone a bowshot beyond that of any other State.    For it is claimed that this act gives the widow the full value of the life of the husband, even though he, in his lifetime, had received from the defendant compensation for the injury inflicted, and that evidence of the release can not be introduced, either as a bar to her recovery, or to be considered by the jury in reducing the amount of the verdict.    A decision which would announce to persons who have settled with parties injured, that the settlement, instead of being in full, was only partial, that if death ensues as a result of the injury, they must pay again, and this time the full value of the life of the deceased, will be justly regarded as a great hardship; and it will come to the widows and children, not as the grant of a right heretofore unjustly withheld, but as a second payment of a claim already satisfied.

Examining the decisions in England under Lord Campbell's act, and the decisions under similar statutes enacted by the various States in the Union, we find that sometimes the right of action is vested in the injured party, and survives to his personal representatives, or family.    Sometimes a cause of action for the death is given to the personal representatives, who sue for the benefit of his estate,— or sometimes for the benefit

of persons who are dependent on him.    In such cases the personal representative is trustee for these beneficiaries, and not for the estate.    In other cases, the widow, or children, are given directly the right of action for the death of the husband.    But these differences are all incidental.    Tiffany, Death by Wrongful Act, § 24.    Each of these statutes had the same purpose as our own ; differing as to details, they are all intended to give the personal representatives, or the members of the family, or whomsoever the plaintiff might be, a right to recover against "the person who would have been liable if death had not ensued."    In Littlewood *v.* Mayor, 89 N. Y. 24, s. c. 42 Am. Rep. 271, the court had under consideration an act giving the personal representative a cause of action for death, and said : "The main purpose was to deprive the wrong-doer of the immunity from civil liability.    The entire gist of the first section is that the wrong-doer shall be liable to an action for damages notwithstanding the death of the person injured.    It does not provide that the wrong-doer shall be liable notwithstanding . . any other defense he might have had at the time of death, but merely that the death of the party injured shall not free him from liability, — showing that this is the point at which the statute is aimed."    Most of the statutes are absolutely silent as to the effect of settlements made by the husband in his lifetime, and yet, notwithstanding this silence, the courts have generally held that such settlement was a bar to another suit against the same party, as the act was not intended to "give two actions for a single injury."    Sawyer *v.* Perry, 33 Atl. Rep. 660.    Some of these decisions had been rendered before our act of 1887, and are fairly to be presumed to have been within the knowledge of the legislature when revising the law on the subject of death by wrongful act.    If that body had intended to change this well-known construction as to the effect of settlement, it would have said so.    Its silence is to be taken as more indicative of approving than disapproving of this line of cases.    For many years the code has permitted a widow, and, if no widow, the children, to recover for the homicide of the husband or father.    During that period, hundreds of instances have occurred in which the husband was injured and has received compensation therefor.    In the very nature of things,

many of these physical injuries impaired health, and probably hastened death, and yet no suit therefor has, until within recent years, been brought by the widow of such person. Evidently, by the common understanding of the community, payment to the husband, accord and satisfaction between him and the defendant, was regarded as a settlement of all liability growing out of the negligent act. (See Lubrano case, 52 Atl. Rep. 207, bot.) We feel safe in saying that many adjustments have been made upon this idea, which would not otherwise have been made, and that giving to the statute the effect now insisted upon would not only be a great hardship upon defendants, who, relying and acting upon the heretofore generally accepted view of the law, have paid their money and bought their peace, but it would be giving to widows something which they did not expect where a settlement had been made by the head of the family.

But it is said that no decision that a release by the husband bars a subsequent suit by or for the wife is of any value in this case, unless it was rendered by a court which holds that the survival and death acts create new and distinct causes of action. This, therefore, must be borne in mind in estimating the weight of the authorities cited. In reading them, with this prominently in view, it is remarkable to note the various expressions used, in the effort to define the relation which the action by or for the widow bears to the action in favor of the injured husband. Some, in fact all of the courts, may be said to call it a new cause of action, as in *W. & A. R. R.* v. *Bass*, 104 *Ga.* 290. Some call it a "new, but not an independent cause of action." Cooley on Torts, 264, speaks of it as an "enlargement" or "continuation." Some call it a "new remedy." Others hold that there is "one cause of action, and if this is not extinguished during the life of the injured party, it survives, and may become two causes of action." Others say "the cause of action for the homicide is 'contingent' on the death of the injured party without having satisfied his claim for damages." But, notwithstanding this variety of expressions, there is substantial unity in holding that a release by the husband bars the wife; this view being taken even by those courts which insist most strongly that the two acts create two causes of action, and

by courts also which rule that concurrent suits may be maintained. However new it may be, in the very nature of things it can not be independent; it is inherently rooted and grounded in the injury to the husband. It grows out of it, and is a part of it, having almost complete identity of substance, and subject to the same defenses. More than a dozen courts have directly passed upon the effect of a release by the husband, and all except those of Massachusetts and Kentucky have held that it bars a suit after his death. Commonwealth *v.* Boston, 134 Mass. 211; Commonwealth *v.* Vt. & M. R. R., 108 Mass. 7; Donohue *v.* Drexler, 82 Ky. 187; L. & N. R. R. *v.* McElwain, 34 S. W. 236 (Ky.); Littlewood *v.* Mayor, 89 N. Y. 24, 43 Am. Rep. 271; Legg *v.* Britton, 24 Atl. 1016 (Vt.); Hill *v.* Pa. R. R., 35 Atl. 997 (Pa.); Hecht case, 32 N. E. R. 302 (Ind.); Fowlkes *v.* Nash. R. R., 9 Heisk. 827 (Tenn.); Holton *v.* Daly, 106 Ill. 131; Price *v.* R. & D. R. R. (S. C.), 12 S. E. R. 414 Walkerton *v.* Erdman, 21 Canada (S. C.), 352; Read *v.* Gt. Eastern Ry., L. R. 32 B. 555, decided in 1868, and other English cases. To which may be added the positive dicta in the Sweetland case (Mich.), 75 N. W. Rep. 1066, 1078, both in the concurring opinion of Long, C. J., and in the dissenting opinions of Hooker and Montgomery, JJ., and the equally positive statement of the Supreme Court of Wisconsin in Brown *v.* Chi. etc., 78 N. W. 773.

The right of the plaintiff to recover in this case notwithstanding the release is said to grow out of the language of our statutes creating two causes of action; one for the injury, and the other for the homicide; and that a settlement of one is not a settlement of the other; it being urged that the survival act of 1889 (Civil Code, § 3825), when construed in connection with the death act (Civil Code, § 3828), logically supports the theory that the two suits may proceed concurrently, and that a recovery for the injury would not be a bar to a recovery for the death. And Vicksburg & M. R. R. *v.* Phillips, 64 Miss. 693, and Davis *v.* St. L. R. R., 53 Ark. 117, which are relied on, certainly sustain the proposition that "concurrent suits may be maintained." But the right to maintain concurrent suits is not involved in this case. What we are to determine is the effect of a release. The two questions are not identical. If the

effect of a release is to destroy the vital principle of the cause of action, neither single nor concurrent suits can spring therefrom. If, however, no release has been signed, and the injured party dies leaving in force a live cause of action, there might arise the question whether, from this living germ, only one suit, or concurrent suits, could spring. If a release wipes out the wrong done by the defendant, and makes it as though no injury had been suffered, then upon the death of the injured party there would be no cause of action, just as though there had been no injury, and it would not be a question as to the right to maintain two concurrent suits, but as to the right to maintain any suit at all. It is, perhaps, improper to consider the act of 1889 (Civil Code, § 3825) as strictly a survival statute; for it does not create or preserve a cause of action, as such, though it does preserve pending suits. It is not so much a survival statute as one to prevent the abatement of cases actually in court. For, if the injured party dies before bringing suit, his administrator could not institute an action for the pain, suffering, and diminished capacity to labor, as was expressly held in *Frazier* v. *Ga. R. Co.*, 101 *Ga.* 79. The act of 1889 is by no means so broad as the survival statutes of some of the other States, which do preserve the cause of action for an injury, whether a suit had been brought thereon, or not, in the lifetime of the injured party. But, even if we treat the act of 1889 as being a survival statute in the fullest sense, and then undertake to discuss the right to maintain concurrent suits, we would be no nearer a solution of the difficulty, so far as the authorities are concerned; for it will appear that the courts have been frequently called on to determine what effect the survival act has upon the death act, and vice versa; whether the remedy under one is exclusive, or whether the two acts confer two remedies, with the right to maintain concurrent actions. The cases are more in conflict than those which pass upon the effect of a release,— at any rate, are far more evenly balanced. Some of them hold that under the survival act and the death act " two separate and distinct causes of action are created, which may coexist, but have no connection, and that these two actions may be prosecuted concurrently." This view is forcibly presented in Needham *v.* R. R. Co., 38 Vt. 395, a

view which is followed and elaborated in Davis *v.* St. L. R. R., 53 Ark. 117; Brown *v.* Chicago, etc. (Minn.), 78 N. W. Rep. 771, and in Vicksburg & M. R. Co. *v.* Phillips, 64 Miss. 693. The contrary view is quite as strongly presented in Legg *v.* Britton (Vt.), 24 Atl. Rep. 1017, overruling the Needham case; Lubrano *v.* Atlantic Mills (R. I.), 32 Atl. Rep. 205, and Chicago *v.* O'Connor, 119 Ill. 586, where it is held that concurrent suits can not be maintained, as "the survival statute was only intended to apply when death resulted from some other cause than the injury," and that in case death results from the wrongful act before the judgment, the death act, and not the survival act, must be relied on.    74 N. W. Rep. 1078.    The Kansas court (McCarthy *v.* R. R., 18 Kan. 46 ; Martin *v.* Pac. R. R. 47 Pac. 605) and the Michigan court (Sweetland case, 75 N. W. Rep. 1066) are divided.    So that we may fairly say the authorities are so evenly balanced, on this point, as to settle nothing, if it were necessary to rule as to the right to maintain concurrent suits.

The assignments of error call only for a ruling as to the effect of a release, and upon that point also there is some conflict, which, however, is not only more apparent than real, but the preponderance is so great as to remove all doubt, — at least, so far as it can be removed in any case, by weight of authority. The Massachussetts court holds that " the husband can not, by a settlement, bar the wife's rights"; but, in that State, the statute is highly penal, — the damages being limited, and recoverable by indictment, the fine being for the use of the family.    Therefore, in Com. *v.* Vt. & M. R. R., 108 Mass. 7, it was held that " conditions on a ticket could not relieve the road from liability under a penal statute for gross negligence " ; and in Com. *v.* Boston etc. R. R., 134 Mass. 211, for the same reason, it was held that want of due care in a passenger would no more be a defense to an indictment for damages than it would have been in a prosecution for murder.    And where the suit was in tort, instead of by prosecution by indictment, the result was the same, for " the fact that the statute is penal must be borne in mind; . . the remedy by indictment was extended to an action of tort; the amount in either case goes to the widow and children. . .    It is, in substance, a penalty given to them in-

stead of the estate, and, as such, the intestate could not release the defendant from liability for it." The same distinction must be borne in mind in considering Donohue v. Drexler, 82 Ky. 187, where the court held that a release by the husband did not bar the wife of her action given by statute, "where the husband was killed by the criminal or malicious use of firearms, or other deadly weapons," and "in such action the jury may give vindictive damages." The court does say that it "creates a new cause of action," but it emphasizes the fact that "this is a highly penal statute, .. . to prevent the perpetration of such acts by awarding vindictive damages." It cites the case of Schlichtling v. Wintgen, 25 Hun, 627, since overruled, and Whitford v. Panama R. R., 24 N. Y. 467. If the fact that the statute is penal is not the underlying reason for the decision in Donohue v. Drexler, then the state of the authorities in Kentucky is in some confusion; for, in L. & N. R. v. McElwain, 34 S. W. 236, it appeared that though the husband had a common-law right of action for deprivation of his wife's services, the statute also gave a remedy for her homicide, the damages to be for the use of the husband. The husband insisted on both remedies, but the court held "there was no intention to multiply actions," and that the husband's action was defeated by a judgment in favor of the wife's representative for larger damages than were recoverable under the old form of action. In Leggott v. Gt. Northern, L. R. 1 Q. B. 599, an administrator had recovered damages for the homicide, under Lord Campbell's act. Afterwards the administrator brought suit for damages to the estate, arising from the "breach of contract of carriage," claiming that he was entitled to "recover the expense of decedent's sickness, nursing, medical attendance, and the like." The court held that the recovery in tort did not bar the action for the breach of the contract; for, as stated by Lord Denman, in Pulling v. Gt. Eastern R., L. R. 9 Q. B. 110, "there was a distinction between actions of contract and actions of tort." Pym v. Gt. Nor., 2 Best & S. 761; Bradshaw v. Lancashire, L. R. 10 C. P. 189; Barnett v. Lucas, 5 Irish Rep. 6 C. L. 247, and the Leggott case, have sometimes been cited to show that they overrule, or weaken, the authority of the Read case, cited supra; but without success. In Littlewood v. Mayor,

89 N. Y. 24, and in Lubrano *v.* Atlantic Mills, 32 Atl. Rep. 205, this was carefully considered, and the Read case shown to be unshaken. See also L. & St. L. R. R., *v.* Clark, 152 U. S. 237. Even Brown *v.* Chi. etc. R. R., which follows the Needham, Arkansas, and Mississippi cases, treats the Read case as authority, and concedes that the Leggott and Bradshaw cases are to be distinguished therefrom, and are not in conflict with it. The statement by Long, C. J., in Hearst *v.* Detroit Ry., 48 N. W. 46, that "satisfaction of one claim would be no bar to the other" is said by him in Brown *v.* Chi. etc. R. R., 75 N. W. 1068, to have been obiter.

We think the cases above cited are the very strongest which can be found in favor of the position taken by the defendant in error. It will be seen that they are based either upon penal statutes or upon decisions which have been overruled, or that they are discussing the effect of concurrent remedies after the death of the injured party, or that the decisions themselves have been weakened by conflicting decisions in the same jurisdictions. To begin with, the English courts have held that Lord Campbell's act created a new cause of action, and yet, in the Read case, the first decision as to the effect of a release, it was pointedly held "that a plea of accord and satisfaction with the deceased in his lifetime was a good bar to an action by his legal representatives." The New York court, in Whitford *v.* Panama, 23 N. Y. 465, positively and unmistakably ruled that "the statute created a new cause of action," that "it was not a mere continuation of the right of action which had been in the deceased." This was reaffirmed and followed in the Littlewood case, and yet it was ruled that "this new cause of action" was barred if there had been a previous judgment for the injury. Judge Rapallo begins the decision by admitting that it was a "new cause of action," but says: "This is not the point on which the case turns. The true question is whether in enacting the statute the legislature had in view a case where the deceased, in his lifetime, brought his action, recovered damages for the injury, which subsequently resulted in his death; and whether it was intended to superadd to the liability of the wrongdoer, who had paid damages for the injury, the further liability in case the party afterward died from such injury." In an

able and carefully considered opinion, the court held that the payment to the deceased barred the suit in favor of the wife. In Legg v. Britton, 24 Atl. Rep. 1016, construing a statute admittedly like our own, the court said: "It is contended that the statute gives a new cause of action. Strictly, it is a new right of recovery"; but it was nevertheless held that where the injured party sued, and, pending the suit, died from his injuries, and the administrator continued the suit and recovered a judgment, that was a bar to an action for the benefit of the widow. If the recovery "was in the right of the intestate, while living, such recovery, in legal effect, would antedate his death, exhaust his right of action, and nothing would remain to survive for the subsequent action. It would exhaust the liability of the wrong-doer, and no liability would remain to be enforced in the subsequent suit."

In Pennsylvania, in Fink v. Garman, 40 Pa. St. 103, the court held "that the section created a 'new cause of action' wholly unknown to the common law, and the right of action was not given to the person suffering the injury, since no man could sue for his own death, but to his widow and personal representatives." Yet after quoting this language, in Hill v. Pa. R. R., 35 Atl. Rep. 997, it was held that "the widow did not have such an independent action for injuries causing her husband's death that he could not, in his lifetime, release or compound it." The cause of action is the same in both cases, but a new remedy is given the widow, which had no previous existence. If he brings an action and obtains judgment, which is paid, it must be conceded that this is the end of the case. The defendant's negligence has been tried and adjudged, and when the judgment has been discharged by payment, it has been satisfied for all purposes. The consequences of the transgression have been suffered, and the penalty paid. The statute preserves the right of recovery, but does not give another and additional remedy to other parties for the same injury." The decision cites the Read case, holds that a release by the injured party was a bar to an action given for the benefit of the widow, and concludes by saying "the person injured has such a right in the cause of action as he may release the offending party from all damages." In the Hecht case, 32 N.

E. Rep. 302, it was "claimed that the statute gave a new right of action.  This is true, in a certain sense.  Without the statute, the action could not be maintained.  The right to sue is purely statutory, and in derogation of common law, and must be strictly construed."  A settlement by the husband was held to bar a suit for the homicide.  In Fowlkes v. Nash. R. R., 9 Heisk. 827, cited in the Hecht case, it was held that as the injured party had recovered a judgment, or made a settlement or release, his personal representatives could not sue.  It was ruled in Holton v. Daly, 106 Ill. 131: "If the injured party has released his claim for damages, his personal representatives can not sue for the homicide."  In Walkerton v. Erdman, 21 Canada S. C. 352, and in Price v. R. & D. (S. C.), 12 S. E. Rep. 414, it was held that releases executed by the injured party barred a subsequent suit for the benefit of the wife, — the South Carolina court distinctly declining to discuss whether the statute gave a new cause of action, or continued the original cause of action.  To these should be added the Sweetland case, 75 N. W. Rep. 1066, 1078, and Brown v. Chicago R. R., 78 N. W. Rep. 773.  The Brown case most distinctly asserts the right to maintain concurrent suits because there were two causes of action.  And yet it recognized that though concurrent suits might be maintained, they could not be, if the party injured during his life had *satisfied the cause of action,* for "the extinguishment of the primary cause of action leaves the statute with no office to perform, and only in the absence of such extinguishment are there two causes of action."

The Supreme Court of Michigan, in the Sweetland case, was divided as to the right to maintain concurrent actions, but there was no disagreement as to the effect of a release.  There were three counts in the declaration.  One was for the common-law liability for pain and suffering endured by the deceased prior to death, which it was claimed was not instantaneous, and the right of action for which it was claimed survived by virtue of the statute.  The second count was for damages to certain personal property; and the third was for the benefit of a dependent brother under the death statute.  There was a verdict in favor of plaintiff on each count.  One of the judges held that, as death was instantaneous, there could be no cause of action

for pain and suffering which could survive. Long, C. J., in concurring, elaborately discusses the question as to whether survival acts and death acts create two causes of action, or only one, and reaches the conclusion that there was only one cause of action, and that one remedy was exclusive of the other; so that there could not be concurrent suits, one for personal injuries, and a separate suit for the homicide. "The fact that the common-law right of action which survives is for the benefit of the deceased's estate, and that the right of action under the death act is given for the benefit of the decedent's heirs, can make no difference in the construction. It was not the intention of the legislature to give two rights of recovery for the same injury which results in death. . . . . . . If such judgment obtained by her in her lifetime, or settlement so made by her, is a bar to a recovery by the heirs, under 8313 and 8314, then a judgment obtained by the heirs for a cause of action accruing to them by survival under 7397 would be a bar to the right to recover for his death under 8313 and 8314." Montgomery, J., in his dissenting opinion, said: "It is generally held, and we think, properly, that if the deceased settles for the injury received in his lifetime, or recovers his damages in an action, an action can not be maintained after his death under Lord Campbell's act"; citing, among others, the article in 28 Am. Law Reg. (n. s.), 385, 513, 577, where the various statutes are reviewed, and the conclusions reached "that the right of action under Lord Campbell's act was *a new cause of action*, and both may be maintained after the death of the injured person, *supposing him not to have recovered damages in his lifetime.*" Hooker, J., in his dissenting opinion, said: "We find that the courts generally hold that the recovery is a bar to a subsequent action by the administrator, and we think the legislature intended that it should be. The greater number of cases discussing the question deny the dual right of recovery. . . The various cases under different statutes are supported by different reasons, but, as already stated, they generally agree in holding that there is a single remedy." Tiffany, in his work on Death by Wrongful Act, § 124, after giving all the acts of the different States, and citing all the cases, including Lord Campbell's act, and decisions thereunder, lays the rule down as follows: "If the de-

ceased, in his lifetime, has done anything that would operate as a bar to a recovery by him of damages for the personal injury, this will operate equally as a bar in an action by his personal representatives for his death. Thus, a release by the party injured of his right of action, or a recovery of damages by him for the injury, is a complete defense in the statutory action."

Having now fully attempted to consider the state of the authorities outside of Georgia, let us see what are the rulings of our own court. It has never had the exact question involved in this case before it; but it can be positively stated that it has never used an expression which could suggest that there might be two recoveries for the same act of negligence. On the contrary, every ruling so far made unmistakably points to the conclusion that the widow can only recover by showing that if the husband had been living, he too could have recovered against the defendant. The *Bass* case, 104 *Ga.* 292, makes this plain. While holding that the widow's cause of action does not accrue until the death of the husband, and that therefore the statute does not begin to run until his death, yet that decision contains this distinct declaration: "What we now rule is evidently not in conflict with the adjudications of this court to the effect that, where a widow sues for the homicide of her husband, the defendant may set up any defense which might have 'been pleaded to the merits of the issue, if a suit had been brought by the husband for injuries to his person." This court has construed sections 3828 and 3829 of the Civil Code to mean that if the husband was an employee, and if under the fellow-servant rule, or if by reason of contributory negligence, he had no cause of action, neither has the wife. So, in a number of other carefully considered cases, these sections have been construed to prevent a recovery by the wife, if the husband himself could not have recovered. Why? The statute does not say so. It simply provides that the widow may recover for the homicide of the husband, caused by crime, or criminal or other negligence. A man may be injured by the negligence of a defendant. His death may be directly attributable to that negligence, and yet, if he consented to the injury, or if by ordinary care he could have avoided the injury or gotten out of the way of the death-dealing negligence, he could not have recov-

ered for the injury, nor could his wife recover for his death. These sections prolong or continue an old cause of action, or they enlarge the old cause of action, or they substitute a new remedy; or it may even be conceded that they give a new cause of action, but they do not deal with defenses to that cause of action. The law applicable to defenses is drawn from other sources, and, in applying that law, this court has repeatedly and consistently held that the wife stood in the shoes of the husband. The widow is bound by relations they had established by contract not illegal. The wrong she sues for must be a legal wrong, a wrong which the law recognizes as a breach of the duty the road owed her husband; she *stands in his shoes*, has his rights, and takes his responsibilities. *W. & A. R. Co.* v. *Strong*, 52 *Ga.* 461. In the next case, *Hendricks* v. *W. & A. R. Co.*, 52 *Ga.* 467, the court says that any relation by contract or law between the person killed and the company, which would bar a recovery by him for damages in case he had not died, applies to and governs the wife; that the principle which allows a defendant, when sued by a widow for the homicide of her husband, to set up any defense which would prevent or lessen the husband's recovery, had he not died, was very clearly recognized in *M. & W. R. R.* v. *Johnson*, 38 *Ga.* 409. Even more distinctly was it ruled in *Berry* v. *N. E. R. R.*, 72 *Ga.* 137 (1), that a widow may recover for the homicide of her husband; she will have a right of action when the husband, had he lived, had such a right, and *whatever would have been a good defense to his suit*, had he lived, will be equally good against one brought by her. In *E. T. V. & Ga. R. Co.* v. *Maloy*, 77 *Ga.* 242 (6), the mother sued for the death of her minor son, and the court said: "The suit being by the parent to recover damages for the killing of a minor, she can not recover unless, if he were in life, he could recover. She stands in no better condition than the deceased would have stood in, had he not been killed, and was present before the court."

In all these cases there is a recognition of the privity between husband and wife, or parent and child, as to the circumstances attending the killing, out of which the liability can grow. Outside of the mere acts of the deceased, the courts have recognized that this privity existed. In *Lord* v. *Pueblo*, 21.

Pac. Rep. 148, after deciding that declarations not part of the res gestæ are not ordinarily admissible, the court held that "such declarations are competent when offered by the defendant; they affect the plaintiff [widow] in a case of this kind in the same way they would have affected the deceased, if he had lived, and brought an action for the same injury." A similar ruling was made in Hughes *v.* Del., 35 Atl. Rep. 190, in a suit by a widow for the homicide of her husband, "since the plaintiff derived her action from the deceased." "At the time his statement was made, the only right of action there was, was in him; the plaintiff had no claim until he died, and then the foundation of her claim was the injury to him. If defendant would not have been liable to him in the first instance, it was not made liable to her by his death. We are not aware of any case in which a widow has recovered for an injury to her husband, where he could not have done so himself, if he had survived, and, on principle, it is perfectly clear that she can never do so, for the original right of action is in him, and hers is but the succession or substitution of his, where he has not asserted it himself." In *A. & W. P.* v. *Venable*, 67 *Ga.* 700, the mother was injured and sued, but died before verdict. Her child then brought suit for the homicide of the mother, and sought to use the mother's interrogatories, which had been sued out in the first case. The court allowed it upon the ground, among others, that *the mother represented her child*, both suing for injuries in the same transaction," the substantial cause being the same. In *Ga. R. R.* v. *Fitzgerald*, 108 *Ga.* 507, it is distinctly ruled that the wife and husband are in privity, and that therefore his declarations are admissible against her. It is conceded that this case is directly in point. But it is said that the declarations were admissible on other grounds. That is true, and the court so ruled; but that the controlling reason was the privity appears from the decision itself. We quote: "Her right to a recovery must necessarily depend upon a determination of the question whether or not 'the husband, had he lived, would have had such right; and whatever would have been a good defense to his suit, had he lived, will be equally available against one brought by her.' *Berry* v. *Northeastern Railroad*, 72 *Ga.* 137. In other words,

she is to be considered *in privity with the husband*, in so far as her right to complain of the homicide is concerned. It follows necessarily that the company should have been allowed to show, by any competent evidence at its command, that the injuries sustained by him were occasioned, not by the alleged acts of negligence on its part, of which complaint was made, but by other and wholly different causes. Section 5181 of our Civil Code provides in terms that 'The declarations and entries of a person, since deceased, against his interest, and not made with a view to pending litigation, are admissible in evidence in any case;' while section 5193 undertakes to state the rule that 'The admissions of privies in blood, privies in estate, and privies in law are admissible as against' all persons with whom they are in privity. Accordingly we think that in the present case the defendant company should have been permitted to prove that the plaintiff's husband, in undertaking to state the cause of his injuries, had 'said that he was making an effort to couple cars, and that his foot struck an obstacle on the track and he fell.'" The *Fitzgerald* case logically leads to the conclusion that the widow is barred by the settlement. To hold otherwise would be to say that the wife could be barred by what her husband said, but not by what he did ; that she might be concluded by words but not by money; that the evidence of her husband, given in the suit for his personal injuries, might be used against her in a suit for his death, but that the more solemn judgment against him would not conclude her.

If the wife is in privity with her husband, it is conceded that his settlement will bind her; but if there is no privity between them as to this class of cases, then if the husband should sue and fail to recover, the wife, after his death, would not be bound by that judgment; she may bring suit and obtain a verdict, notwithstanding the husband failed in his suit. So that not only is a settlement no bar, but neither is a verdict against the husband a bar. This would not only make the statutes penal, but it would not allow the defendant to buy his peace by paying money, nor could he secure peace by making a successful defense immediately after the injury, when the recollection of the witnesses is fresh, when they are all accessible, and when the circumstances of the injury can be most certainly and truth-

fully portrayed.    But, as in this case, five years after the injury, upon proof, that can oftentimes be only too easily secured, that the old injury has been the cause of the recent death, the defendant is again called into court.    What is it to do?    How is it to perpetuate its evidence?    How is it to know whether the suit is ever to be brought or not?    How is it to know whether it is liable or not?    It has been acquitted of liability to the husband, but, years after, it is sought to make it liable to the wife. In many cases it would be perfectly easy for the wife to make out a prima facie case, rely, say, upon the presumptions against railroads, and recover against the defendant who was not at fault, who has been adjudged not to be in fault, but whose witnesses may have died, or moved away, or otherwise become inaccessible.    These are not improbable results.    They are certain to follow, if the contention of the defendants in error is sound.    There is a reasonable bar provided by law for small claims, for notes, for accounts, which require little or no evidence, or only written evidence; but the contention of defendant in error, if correct, will open the door of the court, years after an injury has happened, to determine questions of the most intricate character, requiring the nicest proof of exactly where the dead man was, what he was doing, what he was employed to do, who hurt him, the exact manner of the injury, and all of that elaborate and complicated balancing of conflicting evidence which is an almost invariable accompaniment of a suit for personal injuries.    We can not characterize it better than by using the language of Judge Bleckley in *Western Union Tel. Co.* v. *Nunnally*, 86 *Ga.* 505, in discussing a statute allowing a penalty of $100 against a telegraph company.    The force of what he there said is to be multiplied, because while he was considering a statute which allowed $100, we are considering cases in which the damages will not be hundreds but thousands.  "To leave the company exposed to suits for the almost innumerable transactions of this kind, for twenty years, would be simply absurd."    See also L. & St. L. R. R. *v.* Clark, 152 U. S. 237.    It is true that, even now, under the ruling in the *Bass* case, these results may follow.    But such cases will be exceedingly rare. Where the husband is fatally injured, and the defendant is liable, there will generally be prompt settlement or a suit, the de-

fendant will be put on notice and can prepare for his defense. The serious consequences to which we have referred would result from a ruling that where the husband fails to recover a verdict, or where he makes a settlement, or obtains a verdict, and years after, when he dies, the widow may sue in spite of the previous trials and accord and satisfaction, when the witnesses of the defendant, who are constantly changing, have become scattered and are inaccessible.

The settlement also operates as a bar upon considerations of public policy, interposing a statute of repose; for, if the settlement is not a bar, there is practically no statute of limitations, and oftentimes no person with whom the defendant can settle, and even after a settlement, marriage, birth of afterborn children, death of the wife, minority of the children, and the possibility that the children themselves may die during the lifetime of the injured party, all make the defendant liable to an uncertain extent, as of an uncertain date, to unknown and unknowable persons. In the nature of things, one who claims as a wife is bound by the husband's conduct. His freedom from fault inures to her benefit, but his negligence is imputed to her, when, as a quasi-substituted plaintiff, she asks the court to investigate the circumstances of his killing. If his negligence in the act is imputed to her, should not also his conduct after the injury be imputed to her? In spite of all the recent statutes, "the husband is still the head of the family," his life is his own, his body is his own, and whatever right in that life the law gives to his wife must be subject to the superior right of the husband. While the law gives her the full value of that life, she takes it as he left it. If it was a valuable life, in a pecuniary sense, — if his health, his strength, his habits, were such as to give it a great earning capacity, then great is her recovery. But if, on the contrary, he had so lived as to lessen these elements of pecuniary value, if by idleness and vice and dissipation he had shorn himself of his strength, the wife's right therein must be taken burdened by what he has done in his lifetime. While he lives, his life and his person belong to himself, and he must use that life and body for the support of his family. He must be left free, when injured, to settle for the wrongs which were done to him, and to him alone; he

must be at liberty to adjust that wrong without the amount of his settlement being diminished by the possibility, or probability, that the person dealing with him will have to pay a second time for the same act. The family stand to him in the relation of heirs, and, like all heirs, have no rights which can interfere with those of the living. They take what he leaves; they take under him and subject to him, and not adversely to him. Under this statute, the cause of action primarily grows out of the relation between the husband and the wrong-doer, and his rights against the wrong-doer. The full value of action is in him; only secondarily is it in the wife, and it comes to her, if it comes at all, burdened and encumbered by his conduct, his settlement, and whatever else he did in his lifetime in reference thereto. It is true she may recover the full value of his life, but that value depends on what he was, and what he did in his lifetime, and if before his death he has settled with the defendant, he has, by his own act, transmuted the value of a cause of action into dollars and cents, and deprived his family of any further value growing out of the negligence complained of.

Let us take an instance. A husband loses a limb under circumstances which entitle him to recover. He brings suit. On the trial the judge charges the jury that they may allow the plaintiff compensation for his pain and suffering, for the mortification of living as a maimed man, for all damages arising from the impairment of his health, and from the shock to his nervous system; in addition, they will, from the tables determine what was his expectancy of life at the time of the injury, and how much his earning capacity has been diminished. They will multiply the amount of this diminished capacity by the number of years he would have lived according to the table, reduce that to its present value, and that sum, plus what they allow for pain, suffering, etc., would be the amount of their verdict. Now, in the language of Judge McCay, in *Macon &
W. R. R.* v. *Johnson*, 38 *Ga.* 409, "it is impossible to estimate the value of a life." Still, the law is obliged to measure pain and suffering and life in dollars and cents, and according to rules which are not intended to bankrupt the defendant. In all cases of this class the plaintiff himself consents that the in-

jury shall be valued in money. When he gets a verdict, the law has done all it can to make him whole. The limb and the health have been valued in the only way possible to the law. Theoretically, after he gets a verdict, he has got them back, valued upon the theory that he would have lived out the full term of his life. The jury does not give him the value of his hand for one day, but for twenty years. The jury treats him as though, by a legal certainty, he would live out his alloted span, and thus restores him to himself and family sound and well. Exactly the same results flow from a settlement, because our Civil Code, § 3935, so encourages adjustments that it "will not force parties to litigate in order to have done what they ought, and are willing, voluntarily to do." The settlement or the verdict has atoned for the wrong of the defendant. After that, he may claim that whatever injury was done has been cured, and that he is no longer liable to the injured person or those who claim under him. The substantial grounds on which the courts must hold that the husband's settlement bars the wife are based upon the fact that the wife's right in the life of the husband is subordinate to what he himself has done with his life; that as his negligence is imputable to her, so his ratification and condonation of the wrong done him estops her; that his acceptance of payment ratifies the act, and admits that he has been made whole of his injury; that thereafter the defendant can say, he has not harmed the husband, but that payment, like pardon, relates back to the original act, and makes it as though it had not been. The settlement operates as a bar, upon considerations of a public policy encouraging compromises, which would be rendered difficult, if not impossible, under the view contended for by defendants in error.

The contention of the defendants in error means that if a settlement takes place, the defendant may be called upon to pay a second time in case of death. It means double damages. It means the statute is to be treated as penal and not compensatory. It means that we are to lay at the door of our statute the reproach which was so often and so justly uttered against the statutes of some of the other States, as to which it was said that it was actually "cheaper to kill than to hurt." With us, hereafter, it would mean the same thing, because for the death

of the husband there would only be one recovery. For his injury and subsequent death there could be two recoveries. We have seen that statutes identical with ours in substance, having the same object in view, and intended to give the same rights, have all, or very nearly all, been construed to mean that where the husband was injured and subsequently settled for the injury, and thereafter died from the effect of the injury, there could be no recovery by his wife for his death. She stands in his shoes. She recovers if he could have recovered. She fails if, for any reason, he would have failed. If he consented to the injury he can not recover. If he ratifies the injury by accepting compensation, she can not recover. If by ordinary care he could have avoided the injury, she can not recover. If he obtains judgment against the defendant, she can not recover. What would have estopped him estops her. Not only would it be a hardship to require a defendant to pay double damages, but there are considerations of public policy which cry out against such a construction,—a public policy so pronounced that it would require every reasonable doubt to be resolved in its favor. If the defendant is to pay the injured man full damages, and subsequently is to pay the full value of his life, it becomes manifest that settlements are impossible. It would operate to deprive the injured party "of the power of settling his claim, or realizing anything from it in his lifetime. It would naturally, if not inevitably, prevent settlements, and procrastinate litigation, until it could be determined whether death would ensue from the injury. There could be little inducement to settle without suit, because whatever might be paid to the injured party would neither bar nor diminish the claim of his representative, should death ensue. The statute should not be strained to bring about such a result, nor should it be reached unless required by the plain language of the enactment." Littlewood v. Mayor, 89 N. Y. 24, 42 Am. Rep. 276–7. Under such a construction the law, by its own act, would encourage litigation, in spite of the maxim that "it is to the interest of the commonwealth that there should be an end of litigation." It would make it impossible to obey the injunction, "Agree with thine adversary quickly whilst thou art in the way with him"; for the defendant can properly ask, "Who is mine adversary?" He might be willing to settle, he

may have agreed on terms, and yet he would be compelled to say to a husband and father, "It is impossible to say whether you will die as a result of these injuries or not, or whether, when you die, your wife and your children will then be living or not, or whether you will be wifeless and childless. She may consent to the settlement, but she may also die, and you may marry again. Or, the wife may die and leave you children. It is impossible to settle with them, because they are minors, and even if that were legally possible, there may be afterborn children, and all of these uncertainties must be considered in our negotiations." Surely the law does not intend that any case shall be so inchoate that the person liable does not know to whom he may be ultimately liable, and can not adjust and settle, even when he admits liability and is willing to pay.

*Judgment reversed. All the Justices concurring, except Cobb and Lewis, JJ.*

Cobb, J., dissenting.    Mrs. M. B. Cassin brought suit against the Southern Bell Telephone and Telegraph Company, alleging in her petition that she was the widow of George S. Cassin, who departed this life on the 10th day of December 1897; that on the 16th of May, 1892, while her husband was walking along the sidewalk of one of the streets of the city of Atlanta, the servants and employees of the defendant, who were engaged in placing a cable wire weighing about 500 pounds upon poles which were above the sidewalk upon which her husband was walking, negligently allowed such cable wire to fall to the street and strike her husband upon his head; that he was knocked insensible, and remained in that condition for some time; that the blow produced concussion of the brain and spinal cord, producing at the time partial paralysis, greatly impairing his power of locomotion; that the injuries thus inflicted impaired his mind, and that from them his death resulted. It was further alleged that from the sidewalk to the point on the post at which the cable wire was being fastened was a distance of thirty feet, and that the employees of the defendant negligently failed to hold the same securely and firmly, or to take any measures to keep the same from falling, having failed to fasten or hook the same in any manner whatever while handling and placing it in position on the poles, and negligently

allowing it to slip from its fastenings and from their grasp. The defendant filed an answer denying the allegations of negligence, and that the death of the husband of plaintiff was produced by the injuries received; and also filed a special plea which was stricken by the court and which will be hereinafter referred to. The case came on for trial, and resulted in a verdict against the defendant for the sum of $3,500. Although it does not distinctly so appear, it is to be inferred from the record that Mrs. Cassin died pending the action, and that the children of the deceased were made parties plaintiff, as the motion for a new trial which appears in the record states the parties plaintiff as "Georgia A. Cassin *et al.*, by next friend." This motion for a new trial was overruled, and to this judgment the defendant excepted.

1. The defendant filed a special plea in which it was set up that the deceased, prior to his death, brought suit against the defendant for the injuries alleged in the declaration, and on the 19th of January, 1893, the defendant settled his claim, paying him in full settlement the sum of $2,500, and taking from him a release, in which it was recited that the sum above named was received in full settlement of the suit against the company then pending in the city court of Atlanta, and also in full settlement of any and all claims for damages on his part arising out of the injuries received by him on or about May 16, 1892. These facts were pleaded as an accord and satisfaction of all claims growing out of the right of action now instituted by the plaintiffs, and in bar of the suit now prosecuted by them. Upon demurrer the court struck the plea, and this is one of the errors assigned. This assignment of error presents for decision the question whether a person who has been injured by the wrongful act of another, from which death does not instantaneously ensue, can, by a contract entered into by him with the wrongdoer, defeat the right of his widow or children, as the case may be, to bring an action for damages growing out of the homicide, if death should finally result from the wrongful act of which he has been the victim. Impressed with the importance of this question, and realizing the serious consequences which will result from a decision either way, I have endeavored to make a thorough investigation into the history of the law under which

the present action was brought, as well as into the decisions of the courts of this country and of England on statutes of a similar nature.

In 1845 Lord Campbell introduced into the House of Lords what he termed a bill "for giving compensation to the families of persons killed by negligence." The bill passed the House of Lords, but was lost in the House of Commons. See Campbell's Lives of the Lord Chancellors, Vol. 10, p. 149. In 1846, however, the bill did pass both Houses of Parliament; and was passed, for the purpose, says the author in his Autobiography, of "giving a compensation by action to the families of those who are killed by the negligence of others." Camp. Lives Ld. Chan., Vol. 12, p. 265. That act is known to history as Lord Campbell's act, and that portion of the same which is material to the consideration of the present case is in the following words: "Whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." 1 Shearman & Redfield, Negligence, § 126. In this connection, as a part of the history of this law, showing the chief objection which was raised to it at the time of its passage and the importance with which the author regarded it, the following is extracted from Campbell's Lives of the Lord Chancellors, Vol. 10, pp. 153, 154: "The latter [that is, the "death by negligence compensation bill"] was now a good deal discussed, and Lyndhurst [the Lord Chancellor] showed some disposition to cavil at it. He pretended rather to stand up for the old common-law maxim, that 'the life of a man is too valuable to allow of any estimate of the damages to be given for the loss of it.' I said: 'If a Lord Chancellor were killed by an accident on a railway, there might, certainly, be a difficulty in estimating the sum his family should receive by way of compensation for the pecuniary loss; this would depend much upon the probable tenure of his office, if he had

survived; for he might be likely to retain it for twenty years, or he might be on the point of being ejected from it by an inevitable change of ministry.' *Lord Lyndhurst.*—'There is a much more difficult case which may arise than that which my noble and learned friend has had the kindness to suggest. If my noble and learned friend should, unfortunately, himself, fall a sacrifice to railway negligence, being at present without office and without retired allowance, how would a jury be able to estimate the value of his hopes?' The bill, however, did pass both Houses, notwithstanding a powerful exertion of railway interest to crush it, and it has been the most popular of all my efforts at legislation."

It was the settled doctrine of the common law that no one could maintain a civil action for damages on account of the death of a human being. "The multiplication of fatal accidents in later times, and the practical impossibility of securing the punishment of mere carelessness by means of criminal proceedings," has been assigned as the reason for the passage by the British Parliament of Lord Campbell's act. 1 Shear. & Red. Neg. § 125. Statutes of a similar nature have been passed in nearly all of the different States of the Union. The first legislation on the subject in this State was an act passed in 1850, which was in the following words: "In all cases hereafter where death shall ensue from or under circumstances which would entitle the deceased, if death had not ensued, to an action against the perpetrator of the injury, the legal representative of such deceased shall be entitled to have and maintain an action at law against the person committing the act from which the death has resulted — one half of the recovery to be paid to the wife and children, or the husband of the deceased, if any, in case of his or her estate being insolvent." Cobb's Dig. 476. In 1856 an act in the following words became a law: "If any one shall be killed by the carelessness, negligence, or improper conduct of any of said railroad companies, their officers, agents, or employees, by the running of the cars or engines of any of said companies, the right of action to recover damages shall vest in his widow, if any; if no widow, it shall vest in his children, if any; and if no child or children, it shall vest in his legal representatives." Acts 1855–6, p. 155.

The acts of 1850 and 1856 above quoted were not carried into
the first code in the exact language in which they were enacted,
but in lieu of such acts the following section appears: "A
widow, or, if no widow, a child or children, may recover for
the homicide of the husband or parent; and if suit be brought
by the widow or children, and the former, or one of the latter,
dies pending the action, the same shall survive in the first
case to the children, and in the latter case to the surviving
child or children." Code of 1863, § 2913. The sections of
the Codes of 1868 and 1873 dealing with this matter are in
exactly the same language as that just above quoted. Code
of 1868, § 2920; Code of 1873, § 2971. In 1878 the section of
the Code of 1873 above cited was amended by adding thereto
the following words: "The plaintiff, whether widow or child,
or children, may recover the full value of the life of the de-
ceased as shown by the evidence. In the event of a recovery
by the widow, she shall hold the amount recovered, subject to
the law of descents, just as if it had been personal property de-
scending to the widow and children from the deceased." "No
recovery had under the provisions of this act, and the law of
which it is amendatory, shall be subject to any debt or liability
of any character of the deceased husband or parent." Acts
1878–9, p. 59. The section as thus amended appears in the
Code of 1882, § 2971. This latter section was amended by an
act passed in 1887 (Acts 1887, p. 44); and the provisions of
the section as thus amended appear in sections 3828 and 3829
of the Civil Code in the following language:

"§ 3828. A widow, or, if no widow, a child or children,
may recover for the homicide of the husband or parent; and
if suit be brought by the widow or children, and the former
or one of the latter dies pending the action, the same shall sur-
vive in the first case to the children, and in the latter to the
surviving child or children. The husband may recover for
the homicide of his wife, and if she leaves child or children
surviving, said husband and children shall sue jointly, and
not separately, with the right to recover the full value of the
life of the deceased, as shown by the evidence, and with the
right of survivorship as to said suit if either die pending the
action. A mother, or, if no mother, a father, may recover for

the homicide of a child minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child.

"§ 3829. The word 'homicide,' used in the preceding section, shall be held to include all cases where the death of a human being results from a crime or from criminal or other negligence. The plaintiff, whether widow, or child, or children, may recover the full value of the life of the deceased, as shown by the evidence. In the event of a recovery by the widow, she shall hold the amount recovered subject to the law of descents, as if it had been personal property descending to the widow and children from the deceased, and no recovery had under the provisions of this section shall be subject to any debt or liability of any character of the deceased husband, or parent. The full value of the life of the deceased, as shown by the evidence, is the full value of the life of the deceased without deduction for necessary or other personal expenses of the deceased had he lived."

In 1889 an act was passed, which is now embodied in the Civil Code, § 3825, which declared that "No action for a tort shall abate by the death of either party, where the wrong-doer received any benefit from the tort complained of; nor shall any action for the recovery of damages for homicide, injury to person, or injury to property, abate by the death of either party; but such cause of action, in case of the death of the plaintiff, shall, in the event there is no right of survivorship in any other person, survive to the personal representative of the deceased plaintiff; and, in case of the death of the defendant, shall survive against said defendant's personal representative." Acts 1889, p. 73.

In the light of this history, what intention must be ascribed to the General Assembly in making the changes in the law from time to time, finally culminating in the acts of 1887 and 1889? Was it their intention by this legislation to create one cause of action when a person received an injury as a consequence of the wrongful act done by another, this cause of action to be in the person injured, to deal with it as he pleased, to the exclu-

sion of every one else, if he survived the wrongful act, and the cause of action to survive to some other person in the event death was instantaneous, or the person injured had failed to secure by suit or settlement compensation for the wrong done to him? Or, was it the purpose of the General Assembly to create or recognize two separate, distinct, and independent causes of action; the one to be in the party injured for whatever damages he might sustain, and to survive to his legal representatives in the event he died without receiving compensation; the recovery by the administrator to be assets of the estate of the deceased to be administered according to law; and the other a cause of action in the widow or children or other person named in the statute as authorized to sue for the homicide of another, with the right to recover the full value of the life of the deceased? The General Assembly has a right to impose upon a wrong-doer any penalty suitable as a punishment for the wrong he has committed, which is not prohibited by some constitutional provision. It is therefore within the province of the General Assembly to impose double damages upon one who has by his wrongful act damaged another. In order, however, to authorize a holding that the General Assembly has inflicted upon a wrong-doer a penalty amounting to double damages, it must appear clearly from the legislative acts that such was the intention of the lawmaking body. A law authorizing a widow to recover damages from one who wrongfully takes the life of her husband, the amount of damages to be recovered being either a specific sum, as is the case in the statutes of some of the States, or an amount to be ascertained by a stated rule, as is the case with the statute in this State, is nothing more or less than a legislative imposition upon a person who is the negligent cause of the death of another of a punishment for this negligent act, and the penalty inflicted is allowed to go to the person who sustained loss by the wrongful act, as compensation for the damage done him. While such legislation is punitive so far as the defendant is concerned, it is remedial so far as the plaintiff is concerned. That the legislature in such cases may impose double damages upon a wrong-doer seems to be unquestioned. Littlewood v. New York, 89 N. Y. 24, 27.

The act of 1850 created a cause of action in the legal repre-

sentative of the person whose death was brought about under circumstances which would have entitled him, "if death had not ensued," to a right of action. The amount recovered in this case was assets in the hands of the administrator for administration according to law, unless the deceased was insolvent at the time of his death, in which event one half of the recovery was to be paid over to the widow and children. As the General Assembly would have the right, as has been seen, to impose a double penalty upon a wrong-doer, and as this intention must be clearly apparent from the terms of the statute, it may be that a proper construction of this act would be that it was a survival statute and gave to the legal representative a right to bring a suit only in the event no settlement had been made or no suit brought by the deceased in his lifetime, or in the event that the suit had been brought by him and was pending at the date of his death and for that reason had abated. The act of 1856 provided that if any one should be killed by the carelessness, negligence, or improper conduct of a railroad company in the running of its cars or engines, the right of action to recover damages should vest in his widow; if no widow, in his child or children; and if no child or children, then in his legal representatives. While the words of this statute do not so clearly indicate that it was intended by the General Assembly as a survival statute as is the case with the act of 1850, still, keeping in mind the rule, that the infliction of a double penalty by legislative enactment must be clear and unequivocal, a proper construction of this act would probably be that the right of action of the widow, or child, or legal representative, as the case might be, would depend upon whether the deceased had received compensation for the wrongful act which resulted in his death. It is to be noted that under the act of 1850 the right of action was in the legal representative, although in one contingency a part of the recovery belonged to the widow and children, to the exclusion of creditors. Under the act of 1856 the right of action was in the widow or children, if there were either, and the recovery was had to the exclusion of all other persons interested in the estate of the deceased; and if there was no widow, and no children, there was still a right of action in the legal representative; the amount recovered in such

a case being subject to administration as any other assets in the
hands of the legal representative.   These two statutes seem to
connect the cause of action which the deceased had in his life-
time with the cause of action which was allowed to be asserted
under the acts.   While under the act of 1850 the widow and
children are entitled to rights in the recovery which they would
not be entitled to in the ordinary assets of the estate of the de-
ceased, still the power to assert the right is in the legal repre-
sentative, who would be recognized in law as the successor to
the right of action which was in the deceased.   And although
under the act of 1856, as we have seen, the right of action was
vested primarily in the widow eo nomine, still a strict con-
struction of this act might require that it be construed to be a
survival statute and not one creating a cause of action independ-
ent of that which could be asserted by the person injured.   The
provisions of the Code of 1863, which are quoted above and
which have been carried into all the codes and are now the
law of this State in the exact language which appears in the
first code, while evidently taken from the acts above referred
to, are materially different in language from the old law.   There
is now no distinction in regard to this matter between the lia-
bility of natural persons and corporations, nor between the lia-
bility of railroad companies and other corporations.   The right
of action is not described, as in the act of 1850, as one given to
recover where death ensued under circumstances which would
have entitled the deceased, had death not ensued, to sue and
recover for the injury to him; nor, as in the act of 1856, as one
to recover for the carelessness, negligence, or improper conduct
of the wrong-doer; and what is intended to be accomplished
by these expressions is embraced in the present law in the one
word "homicide."   The person authorized to bring the suit is
the widow, and, if no widow, the child or children.   If the
widow brings the suit and dies pending the same, the action
survives to the child or children; and if there was no widow and
no child or children, there was, prior to the act of 1887, no right
of action in any one, and prior to the act of 1889 a suit brought
by the widow would, upon her death, abate if there were no
children; and if brought by the children, upon their death
would abate.   In no event, either under the law as it was at the

time of the passage of the act of 1887, or as it is since that act, can a legal representative bring a suit for the homicide of his intestate.

It seems clear that the changes made by the Code of 1863 in the acts of 1850 and 1856 manifest an intention to separate the right of action which is in the person for the wrongful act committed upon him from the right of action which is, under the law, in the widow, or other persons, if death results from such wrongful act. If one survives the injury inflicted upon him by the wrong-doer, he is to have a right to demand compensation for this wrong, and this is independent of any right which any other person might have to make claim upon the wrong-doer either in the lifetime of the person injured or after his death. If death results, or in the language of the law, if there is a homicide, then the widow of the deceased, or other person named in the statute, is entitled to demand compensation under the terms of the statute; and this right is entirely separate, distinct, and independent from the right which the deceased could assert in his lifetime. A right of action under the act of 1850 in the legal representative, and a right of action in a certain contingency under the act of 1856 in the legal representative, would seem to be intended by the legislature as a means of transmitting from the deceased to the widow, or other person, the right of action of the deceased. Such being the case, if the right of action was settled during the lifetime of the deceased, there was nothing to be transmitted through the medium of his legal representative to his widow, or other persons who might sustain loss by his death. When the legislature sees proper, as it has done, to eliminate the legal representative from the statutes authorizing suits for homicide and leave the person injured with full right to bring his suit for damages and demand compensation for the wrong done him, as he has always had, and to give to the widow, or other person named in the statute, an action for the homicide; and there being no words whatever in the statute which could be strained to connect the right of the deceased to bring an action, during his lifetime, with the right of the widow, or other person named, to bring an action after death, but one conclusion can be arrived at, and that is, that it was the intention of the General

Assembly to create two separate and distinct causes of action, which may be asserted independently of each other; and this would be true notwithstanding in some cases the effect of it would be to impose upon the wrong-doer a double penalty as a punishment for the injury which he has inflicted. This view of the case is strengthened when we consider the act of 1889. Prior to that act a suit brought by a person during his lifetime abated upon his death. In other words, the right of one to demand compensation for the injury done him existed as long as he lived, and when he did not succeed in securing a settlement of the demand during his lifetime, the right of action did not pass to his legal representatives. The act of 1889 provides that no action for the recovery of damages for injury to the person suing shall abate by the death of either party, but shall survive to the personal representatives of the deceased plaintiff. In such case the amount of the recovery by the legal representative would be assets in his hands for administration according to law. There is no provision, as in the act of 1850, that such recovery should be for the benefit of the widow and children; and therefore it can not be properly held that it was the intention of the General Assembly by this act to provide that when this cause of action survived it would defeat the right of the widow to bring suit for the homicde; and it certainly can not be held that the widow's suit for the homicide could be pleaded in abatement of this suit which survived to the personal representative. As the law giving an action to the widow for the homicide says nothing at all in reference to the right of the husband to bring an·action during his lifetime for the injury to him, so the act which provides that the husband's suit, in the event of his death, shall survive to his legal representative, says nothing at all in reference to the right of the widow to bring a suit in the event he dies. If the pendency of a suit by the legal representatives for the injury to the deceased could not be pleaded in abatement of the suit of the widow for the homicide of her husband, I am at a loss to understand how it could be contended that the judgment in favor of the deceased during his lifetime could be so pleaded; and for a similar reason it would seem that an accord and satisfaction entered into between the deceased and the wrong-doer during his lifetime

would not be a bar to the suit by the widow after his death. I can arrive at no other conclusion than that it was the intention of the General Assembly to provide for two causes of action when a person was negligently injured and death did not immediately but did finally result from the injury received; that is, the one which the person injured would have under the common law, and the other the one which the widow, or other person named in the statute, would have under the Code of 1863 as amended by the act of 1887.

I have been unable to find any ruling by this court which would be either directly controlling upon this question, or which would have such a bearing upon the same as would be recognized as persuasive authority either way. It is proper, however, in this discussion to allude to the rulings and utterances of the court in some of the cases which have been brought under the different statutes above referred to. So far as I have been able to ascertain, the only case brought under the act of 1850 which ever reached this court was the case of *Southwestern R. Co.* v. *Paulk*, 24 *Ga.* 356. No ruling was made in that case which would have any bearing upon the question now under consideration. No case brought under the act of 1856 seems ever to have reached this court. The first time that this court was called upon to deal with the law as contained in the Code of 1863, was in 1868, after the code of that year went into effect. This was in the case of *Macon R. Co.* v. *Johnson*, 38 *Ga.* 409, where it was held, that if the deceased by the exercise of ordinary diligence could have avoided the injury, his widow could not recover damages; and also that, if both the deceased and the wrong-doer were at fault, the damages would be diminished in proportion to the negligence or want of ordinary care on the part of the deceased. It is to be noted that this decision was prior to the act which declared that the measure of damages should be the full value of the life of the deceased. In the case of *Western & A. R. Co.* v. *Strong*, 52 *Ga.* 461, Judge McCay uses this language: "But by our law the right is given by statute to the wife generally for the 'homicide' of her husband. Cases of self-defense, of inevitable accident, of execution by command of the law, etc., must, from the nature of things, be excepted. And it seems to us that the true inquiry is: has

the defendant violated any of the public or private obligations he was under to the deceased? Whether those obligations or duties were implied by law or existed by express contract is immaterial; but that some duty, public or private, was violated by the homicide, would seem to follow from the very nature of a wrong, and from the principles of justice and equity. And our original act giving this action puts the right precisely on this ground, to wit: whenever the husband, had he lived, would have had a right of action, then the wife has it in case of his death." In the case of *Hendricks* v. *W. & A. R. Co.* 52 *Ga.* 467, it was held that, in an action by a widow against a railroad company for the homicide of her husband, all the facts and circumstances connected with the killing, or any relation existing by contract or by law between the deceased and the defendant, which would bar a recovery by him for damages in case he had lived, apply and govern the right of the wife. A similar ruling was made in the case of *Atlanta R. Co.* v. *Ayers*, 53 *Ga.* 12. In the case of *Cottingham* v. *Weeks*, 54 *Ga.* 275, it was ruled that the fact the defendant had been tried upon an indictment charging him with the offense of murder, and been acquitted, could not be pleaded in bar of the widow's suit for the homicide. When the same case came before this court a second time, in 56 *Ga.* 201, it was held, that a widow could recover for the homicide of her husband, whether the homicide be the act of a natural or artificial person, or the result of intention or criminal negligence. The ruling in the *Hendricks* case, supra, was followed and approved in the case of *Southwestern R. Co.* v. *Johnson*, 60 *Ga.* 667.

In the case of *Central R. Co.* v. *Roach*, 64 *Ga.* 635, it was held that a suit by a widow against a railroad company for the homicide of her husband, who was an employee of the road, could not be maintained unless it was shown that in the transaction resulting in the death of the employee he was free from fault. In *Daly* v. *Stoddard*, 66 *Ga.* 145, it was held that, in order to authorize a recovery by a widow for the homicide of her husband, his death must have been caused by some act amounting to a crime, or by the criminal negligence of the defendants. This case was decided before the passage of the act of 1887. In *Cook* v. *W. & A. R.*, 72 *Ga.* 48, it was held that a contract entered into by a husband, who was an employee of the company,

which waived the right to sue for injuries resulting from criminal negligence on its part, was void, and could not be pleaded in bar of the widow's right to recover.    In *Berry* v. *Northeastern R.*, 72 *Ga.* 137, it was held that a widow had a right of action for the homicide of her husband, whenever the husband, had he lived, would have had such right; and that whatever would have been a good defense to his suit would be equally available against one brought by the widow.    An examination of that case, however, will show that the defense relied on was that the deceased could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence.    In *Central R. Co.* v. *Brantley*, 93 *Ga.* 259, the rule, that a widow of an employee of a railroad company could not recover against the company for the homicide of her husband, if the husband was at fault, or if he could have avoided the consequences of the defendant's negligence by the exercise of ordinary care and diligence, was recognized.    In *Georgia R. Co.* v. *Fitzgerald*, 108 *Ga.* 507, it was held that an admission by a person tending to show that an injury which he had received, and which subsequently resulted in his death, was caused by an accident, and not by the negligence of the company, was admissible in evidence in a suit brought by the widow to recover for the homicide.    See also, in this connection, *Central R.* v. *Roach*, 70 *Ga.* 434; *Savannah Ry.* v. *Stewart*, 71 *Ga.* 427.    It clearly appears from the present law of the State governing rights of action of the character involved in the present case, as well as from the decisions of this court above referred to, that a widow, or other person named in the statute, is not entitled to recover unless the homicide is brought about as a result of a crime or criminal or other negligence of the party occasioning it, and that no recovery can be had for the homicide if the negligence of the deceased was of such a character as would have precluded a recovery by him; or if, during his life, he had done any act or entered into any contract which would have the effect of rendering the act which brought about his death one which was either lawful in the person committing the same, or one for which he would not be legally responsible.    In other words, the right of a widow to recover is not because the death of her husband has been brought about by the act of some person, but his death must be the re-

sult of some act of commission or omission on the part of the defendant which the law would declare to be negligent, and under such circumstances that, had death not resulted, he would have been entitled to demand compensation. It is therefore clearly right that the widow should be deprived of her right to bring a suit if the deceased could have avoided the consequences of the defendant's negligence by the exercise of ordinary care, as well as in the case where the deceased had entered into a contract which had the effect of making the act of the defendant lawful as to him, and also in all of those cases where the facts and circumstances surrounding the killing, as well as those leading up to and preceding it, were such as to show either that the defendant had been guilty of no wrongful act, or that the deceased was the victim of his own folly in matter of contract, or of his carelessness in matter of conduct.

All of the cases which we have cited above, being all we have been able to find in our reports dealing with the question under consideration, relate to some act done by the deceased prior to or concurrent with the injury which he received. When a person is injured by the wrongful act of another, a foundation is at once laid for a cause of action in favor of those entitled under the law to demand compensation for his death; and the moment that his death results from such wrongful act the cause of action is full and complete. Nothing the person injured can say or do between the date of the wrongful act and his death can defeat the cause of action for the homicide. The *Fitzgerald* case, cited supra, is apparently in conflict with this proposition, but not, I think, really so. The proposition above stated presupposes a *wrongful* act resulting in the death of the person wronged. In the *Fitzgerald* case evidence of an admission of the party injured was allowed to show that no wrongful act had been committed by the defendant, but that the act complained of, as to the person injured, was lawful. Hence it tended to establish that no wrongful act was committed, and therefore no cause of action arose in favor of anybody. For the purpose of admitting such evidence the deceased and the widow might be considered in privity. But, even if this is not true, the admission of the evidence in the *Fitzgerald* case was predicated upon another principle, and that is, that a declara-

tion against interest by a person since deceased, under well-established principles as recognized by the authorities there cited, is admissible in a controversy between third persons. It would seem that the ruling made in that case was better supported by the latter reason than by the former. In the case of *Western & A. R. Co.* v. *Bass*, 104 *Ga.* 390, this court had before it the question as to when the statute of limitations began to run against the widow's right of action to recover for the homicide of her husband. It was held that, as such right did not exist until he was dead, the statute of limitations began to run from his death, and not from the time that the injury was inflicted which caused his death. In the opinion Mr. Justice Fish uses this language: "The plaintiff's action, however, was not for injuries done to the person of her husband. She had no right under the law to sue for such injuries; no one except the husband himself could maintain an action for them. If, however, such injuries resulted in his death, then, under section 3828 of the Civil Code, a right of action accrued to her. That section provides that a widow may recover for the homicide of her husband, and plaintiff's suit is based upon the cause of action therein given her. This statute does not profess to revive the cause of action for the injury to the deceased in favor of his widow, nor is such its legal effect; but it creates a new cause of action, in favor of the widow, unknown to the common law. The right of action given by the statute is for the *homicide* of the husband, in all cases where the death results from a crime, or from criminal or other negligence, and is founded on a new grievance — namely, his homicide, and is for the injury thereby sustained by the widow and children, to whose exclusive benefit the damages must enure." While the question now under consideration was not directly involved in that case, the argument made by Mr. Justice Fish in demonstrating the correctness of the conclusion as to the question then before him directly bears upon the present question, even if it is not conclusive of the same.

Cases arising under statutes similar to ours have been before the courts of last resort in different States of the Union and of England; and while the decisions are not altogether in accord, some of them are authority for the conclusion which I have

reached in the present case. Those holding the contrary are based on statutes more nearly similar to Lord Campbell's act; and it may be conceded, for the sake of the argument, that the cases which hold that and similar statutes to be survival stat-utes, were correctly decided. See, in this connection, Tiffany, Death by Wrongful Act, § 24. This, however, did not seem to be the opinion of the author of that act, as is shown by the above-quoted extracts from his Lives of the Lord Chancellors. In the case of Needham v. Ry. Co., 38 Vt. 294, it was held that under statutes which are very similar to ours two causes of ac-tion arose out of the wrongful death of another; one in favor of the decedent for his loss and suffering resulting from the injury in his lifetime; the other founded on his death, or on the damages resulting from his death to the widow or next of kin of the deceased; and that each cause of action was to be prosecuted independently of the other; the damages allowed to be recovered in the two statutes being given upon entirely different principles and for different purposes. Under statutes of a similar nature the Supreme Court of Mississippi held that a right of action in the administrator to prosecute a suit for personal injuries, begun during the lifetime of his intestate, was distinct from, and independent of, the right of action given by statute to the next of kin to recover for the death of the person caused by the wrongful or negligent act of another; that the two sections could coexist, and that they had no connec-tion with each other. Vicksburg & M. R. Co. v. Phillips, 64 Miss. 693. The Court of Appeals of New York held that a statute very similar to Lord Campbell's act was not simply remedial, but created a new cause of action in favor of the per-sonal representative of the deceased, which was wholly distinct from and not a reviver of the cause of action which, if he had survived, he would have had for his bodily injury. Whitford v. Panama R. Co., 23 N. Y. 465. Judge Denio in his opinion uses this language: "But the suggestion that the present ac-tion is brought to enforce the right which the common law gave to the deceased, and that the provisions of our statute should be considered as affecting only the remedy, which may always be regulated by the lex fori, is not, in my opinion, sound; for it is not a simple devolution of a cause of action which the de-

ceased would have had which the statute effects, but it is an entirely new cause of action which is here sought to be enforced. The system of the statute, as well as of the common law, is, that the right of action for damages on account of his bodily injuries, which belonged to the deceased while he lived, was extinguished by his death. The statute does not profess to revive his cause of action in favor of the executor or administrator. The compensation for the bodily injuries remains extinct, but a new grievance of a distinct nature, namely, the deprivation suffered by the wife and children, or other relatives, of their natural support and protection, arises upon his death and is made by the statute the subject of a new cause of action — in favor of these surviving relatives, but to be prosecuted in point of form by the executor or administrator. The reference, in the first section of the statute of 1847, to the ability of the deceased to maintain the action if death had not ensued, is inserted solely for the purpose of defining the kind and degree of delinquency with which the defendant must be chargeable in order to subject him to the action. The act, neglect, or default must be such as would (if death had not ensued) have entitled the party injured to maintain an action," etc. The Supreme Court of Arkansas held, under statutes similar to ours, that two causes of action could be maintained for the wrongful death of an individual; one for the benefit of his estate, and the other for the benefit of his next of kin. Davis v. St. Louis R. Co. (Ark.), 13 S. W. Rep. 801.

Section 18 of chap. 32 of the Public Statutes of Massachusetts provides that if a person suffers bodily injury or damage to his property through a defect in a highway, townway, causeway, or bridge, which defect might have been remedied, or which damage or injury might have been prevented by the exercise of reasonable care and diligence on the part of those obliged by law to repair the same, he might recover against the wrongdoer for such injury or damage. Section 17 provides that if life is lost on account of an injury received in the manner described in the foregoing section, an action may be brought against the county, town, or person obliged by law to make the repairs, by the personal representative of the deceased for the benefit of the widow and children, to recover a sum not ex-

ceeding $1,000. In Bowes *v.* Boston, 15 L. R. A. 365, the Supreme Court of Massachusetts held that the action provided for in section 18 survived the death of the person injured, and was independent of the action provided for in section 17; and that "both actions may proceed at the same time on independent grounds and for different purposes." A statute of Kansas provides that causes of action for personal injury survive the death of the person injured. Another section provides: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission." The section further provides that the damages recovered in such a case shall not exceed ten thousand dollars, and shall enure to the exclusive benefit of the widow and children, if any, or next of kin. In McCarthy *v.* R. Co., 18 Kan. 46, it was held that the action for personal injuries survived only in the event the death did not result from such injuries; and that where death resulted from the injuries, only the action for the homicide for the benefit of the next of kin could be maintained. This decision was followed by the circuit court of the United States for the district of Kansas, in Hulbert *v.* Topeka, 34 Fed. Rep. 510. Mr. Justice Brewer delivered the opinion, and, while he felt bound by the decision, he criticised adversely the ruling therein made, as the following extract from his opinion will show: "I was a member of the Supreme Bench of Kansas at the time this opinion was filed, and concurred in it. I feel constrained to follow that decision; and yet I may be permitted to say that my examination of this case has led me to doubt the correctness of that conclusion, for the measure of damages and the basis of recovery under the two sections are entirely distinct. Section 422 [the homicide section] gives a new right of action,—one not existing before; an action which is not founded on survivorship; an action which takes no account of the wrong done to the decedent, but one which gives to the widow or next of kin damages which have been sustained by reason of the wrongful taking away of the life of the decedent. It makes no difference whether the injured party was killed instantly, or lived months;

whether he suffered lingering pain or not; or whether or not he was put to any expense for medical attendance and nursing. None of these matters are to be considered in an action under section 422; and the single question is, how much has the wrongful taking away of his life injured his widow or next of kin? It is an action to recover damages for the death, and in no sense a survival of an action which the decedent himself had in his lifetime." In Railway Co. *v.* Bennett, 47 Pac. Rep. 183, a decision rendered in 1896, the Court of Appeals of Kansas, in a well-considered opinion by Garver, J., repudiated the doctrine laid down in the McCarthy case, and put himself in line with the above-quoted language of Mr. Justice Brewer, and with other decisions referred to in the opinion. It will be noticed that the Kansas law is very similar to Lord Campbell's act. In Adams *v.* Ry. Co., 95 Fed. Rep. 938, it was held that the statutes of Washington and Idaho, which are very similar to Lord Campbell's act, created an entirely new cause of action independent of the right of the deceased to recover for the injuries to him.

The following decisions, while not directly in point, in their reasoning tend to support the conclusion I have reached in the present case: Jeffersonville R. Co. *v.* Swayne, 26 Ind. 477, 484; Maney *v.* Chicago R. Co., 49 Ill. App. 105; Railroad Co. *v.* Cozby, 69 Ill. App. 256; Chicago R. Co. *v.* Wymore, 40 Neb. 645; The Oregon, 73 Fed. Rep. 846; Com. *v.* Met. R. Co., 107 Mass. 236; Ry. Co. *v.* Hosea (Ind.), 53 N. E. Rep. 419, decided in 1899; Louisville R. Co. *v.* Clarke, 152 U. S. 230; Martin *v.* R. Co., 151 U. S. 695 et seq.; Doyle *v.* R. Co. (Mass.), 59 Am. & Eng. R. Cas. 118; Donahue *v.* Dresler (Ky.), 56 Am. Rep. 886; Hurst *v.* Ry. (Mich.), 48 N. W. Rep. 44; Westcott *v.* R. Co. (Vt.), 17 Atl. Rep. 745; Railroad Co. *v.* Kuehn, 70 Tex. 582; Munro *v.* Dredging Co. (Cal.), 24 Pac. Rep. 303; Putnam *v.* So. Pac. Co. (Or.), 27 Pac. Rep. 1033; Belding *v.* R. Co. (S. D.), 53 N. W. Rep. 750. It has been ruled in England that the cause of action under Lord Campbell's act was the defendant's negligence, and that if the deceased had in his lifetime accepted a sum of money in full satisfaction and discharge of his claim against the defendant, this would bar the right of the legal representative to recover for the homicide; the death of the person injured not creating "a fresh cause of action." Read *v.* Great Eastern Ry. Co.,

L. R. 3 Q. B. 555, s. c. 9 Best & Smith's Rep. 714. See also
Griffiths v. Earl of Dudley, 9 Q. B. 357; Haigh v. Steam Packet
Co., 52 Q. B. D. (N. S.) 640; Wood v. Gray (H. L.), 1892, App.
Cas. 576. The decisions, however, in England, even under
Lord Campbell's act, have not been uniform. In Bradshaw v.
Ry. Co., 10 C. P. 189, it was held that where a person was in-
jured on a railway by an accident, and after an interval died,
his executor might maintain an action for damage to his per-
sonal estate arising in his lifetime from medical expenses and
loss occasioned by his inability to attend to business. In mak-
ing the decision the court found it necessary to construe Lord
Campbell's act, and in reference thereto Grove, J., uses this lan-
guage: "The intention of the act was to give the personal repre-
sentative a right to recover compensation as a trustee for chil-
dren or other relatives left in a worse pecuniary position by rea-
son of the injured person's death, not to affect any existing right
belonging to the personal estate in general. There is no rea-
son why the statute should interfere with any right of action an
executor would have had at common law. In the case of such
right of action he sues as legal owner of the general personal
estate which has descended to him in course of law; under the
act he sues as trustee in respect of a different right altogether
on behalf of particular persons designated in the act."

The decision in the Bradshaw case was questioned but fol-
lowed in Leggott v. Great Northern Ry. Co., L. R. 1 Q. B. D.
599 (45 L. J. Q. B. (N. S.) 557). In that case suit was brought
by the widow as the personal representative of the estate of the
deceased, to recover for the expense incurred by the latter in con-
sequence of the injury, and for loss by reason of inability to at-
tend to business, etc., and it was held that the recovery by the
plaintiff in a former suit brought in her representative capacity,
for the benefit of herself and children, to recover for the homi-
cide of the deceased, did not abate the action. In that case it
was contended that an admission made in the former suit by
the plaintiff operated as an estoppel in the latter, but the court
was agreed that this contention could not be maintained, while
they doubted whether a proper construction of Lord Campbell's
act authorized the bringing of a second action at all. See also,
in this connection, Pym v. Ry. Co., 3 Best & S. 396. In Town

of Walkerton v. Erdman, 23 Can. S. C. 352, it was held that where an action was brought by a person injured, in which his evidence was taken de bene esse, such evidence was admissible in a subsequent action brought under Lord Campbell's act. From this proposition two judges dissented, but the court was of opinion that the principle of the decision in Read v. Great Eastern Ry. Co., supra, was controlling.    The construction of Lord Campbell's act, made in the decision last cited, has been followed by the courts in many of the States of the Union, where the statutes on the subject are in the same or similar language as that contained in that act.    See Littlewood v. New York, 89 N. Y. 24, 27, s. c. 42 Am. Rep. 271; Dibble v. New York Ry. Co., 25 Barb. 183; Hecht v. Ohio Ry. Co., 132 Ind. 507, s. c. 32 N. E. Rep. 302; Goodsell v. Hartford R. Co., 33 Conn. 51; Price v. Richmond & D. R. Co. (S. C.), 12 S. E. Rep. 413; Birch v. Pittsburg Ry. Co. (Pa.), 30 Atl. Rep. 826; Sawyer v. Perry (Me.), 33 Atl. Rep. 660; R. R. Co. v. Long (Tex.), 24 L. R. A. 637; L. & N. R. Co. v. McElwain (Ky.), 34 L. R. A. 788, and notes; Hill v. R. Co. (Pa.), 35 L. R. A. 196; Hansford v. Payne, 11 Bush, 380; Fawlkes v. R. Co., 9 Heisk. 829; Est. of Taylor, 179 Pa. St. 254; Andrews v. R. Co., 34 Conn. 57.    In this connection see 1 Jagg. Torts, 310; Tiffany, Death by Wrongful Act, § 124; Cooley, Torts, * 264.    In Legg v. Britton, 24 Atl. Rep. 1016, the Supreme Court of Vermont held, that where the plaintiff in an action for personal injuries died from such injuries pending the action, and his administrator recovered judgment therein, such a judgment was a bar to an action by the administrator for the benefit of the widow or next of kin, under the statute of that State.    This decision is directly in conflict with the decision made in the case of Needham v. Ry. Co., cited supra, and Ross, C. J., in the opinion says that what is said on the subject in the Needham case is obiter.    In Illinois, where there was a statute, passed in 1853, very similar in language to Lord Campbell's act, and one passed in 1872, which provided that actions to recover damages for injuries to the person, except slander and libel, should survive, it was held that the act of 1872 did not repeal the act of 1853, but that the former act simply referred to cases where the death was not the result of the wrongful act complained of in a pending case.

Holton *v.* Daly, 106 Ill. 131.   The Supreme Court of Kentucky held that under statutes of that State two causes of action, one for the mental and bodily suffering of the person injured, and the other for the loss of life, did not survive, when the suffering and death were caused by the same wrongful act; and that the party entitled to sue must elect whether he would bring the one or the other; and that the pendency of one action was a sufficient reason for the abatement of the other.   Conner *v.* Paul, 12 Bush, 144.

In 8 Am. & Eng. Enc. L. (2d ed.) 870, the rule is stated by which it can be determined whether the statutes authorize two actions, one by the legal representative for the benefit of the estate of the decedent, and the other by the widow or next of kin, or only one action, which may be commenced by the person injured in his lifetime and survive to his legal representatives, or be commenced by them after his death, in the following language:   "When the right of action by the statute is merely such as the deceased would have had if he had survived the injury, a release properly executed by him in his lifetime is a complete defense to an action by his personal representative or others to recover damages for his death.   The same rule is true where the statute is not a survival statute, but creates a new and distinct cause of action in favor of certain beneficiaries, if it provides that the right of action shall exist only in cases where the deceased himself might have maintained the action had he lived."   Applying this rule to our statute, what is the result? It is clear that the right of action given to the widow, or other person therein named, is not merely such as the deceased would have had if he had survived the injury, for the simple reason that this right of action, by the terms of the act of 1889, survives to the personal representative of the deceased.   Neither is the statute a survival statute.   The personal representative of the deceased has no connection with the cause of action or with the suit, and is not mentioned in any way in the statute. The statute creates a new and distinct cause of action, as has been ruled in the case of *Bass,* supra; and it is not distinctly provided that the right of action shall exist only where the deceased himself might have maintained the action had he lived.   If the act of 1850 were still of force, with the language

in it which is similar to the language in Lord Campbell's act, then the ruling made by the court of Queen's Bench in Read *v.* R. Co., which has been followed by so many American courts in construing similar statutes, might be looked to as persuasive authority in determining what is a correct construction of that act.   But the General Assembly has seen fit to change the language of the statute in such a way that it can not be connected in any way with Lord Campbell's act, except that that act was doubtless the origin of our legislation on the subject.   The language of Lord Campbell's act was not strictly followed in the act of 1850.   It was departed from materially in the act of 1856, and, as has been seen, the Code of 1863 made radical changes in the act of 1856.   I am aware of the hardship that may result from the interpretation thus placed upon this law; but this fact should not be considered when the intention of the General Assembly to pass a law which would work such hardship is clear and manifest.

2.   During the progress of the trial the defendant offered in evidence the receipt given by Cassin during his lifetime for $2,500, which recited that it was in full satisfaction of all claims that Cassin had against the company.   Counsel for the defendant contended that, even if the receipt was not admissible for the purpose of showing that the action was barred, it was admissible as a bar of all damages for decreased earning capacity up to the moment of the death of the deceased.   The court ruled that the measure of damages was fixed by statute, which declares that the measure of damages is the full value of the life of the deceased, as shown by the evidence, and refused to admit the receipt in evidence.   If the deceased can not by contract discharge the defendant from liability to the widow, it is difficult to see how the amount that is paid to him in discharge of the claim which the law allows him to assert could be used as evidence to diminish the recovery to which the law says the widow is entitled.   It is true that the conduct of the deceased at the time that the wrong is inflicted which results in his death may be such that the damages which his widow would recover would be diminished, as was held in the case of *Macon & W. R. Co. v. Johnson,* supra; but it has never been held that anything done by the deceased after the injury was complete would

have the effect of diminishing the damages which the law declares the widow shall recover in the event her husband died from the effect of the wrongful act. Judge Reid, in his charge to the jury, used the following language: "The measure of damages in this case, if the plaintiffs are entitled to recover, would be the present cash value of the financial value of the life of their father, calculated from the time of his death." This is the correct rule to be applied. Of course there should have been no recovery in this case for any damages sustained by Cassin, such as loss of time, pain and suffering, decreased ability to labor, and the like; and the plaintiffs in the present case were, therefore, not entitled to recover any loss which accrued to their father between the date of the injury and the date of his death. But while this is true, it was competent to show, in order to determine what was the full value of his life to his children, and therefore their loss growing out of his death, what was the condition of his health and his earning capacity prior to the injury. The full value of the life is not to be determined by the condition of the injured person after the wrong-doer has disabled him. Any other rule would bring about this result: if the wrongful act was of such a nature as to entirely destroy the injured person's capacity to labor and still he survived the injury, the persons entitled to sue upon his death resulting from such injury could recover nothing, because his life between the date of the injury and the date of his death would have no pecuniary value. It can not be seriously contended that this is the law. If it is, a person who commits an injury to the person of another tending to destroy his life should be diligent to see that death does not ensue immediately and that his victim should survive a reasonable length of time in a totally disabled condition. In a case like the present the recovery should be the full value of the life of the deceased, taking into consideration what would have been his earning capacity at the time of his death, if he had not sustained the injury which resulted in his death.

The foregoing sets forth fully the reasons which constrain me to dissent from the conclusion reached by a majority of the court. I believe the conclusion I have reached is founded upon absolutely sound reasons and is abundantly supported by au-

thorities, both English and American, and the current of American cases which have dealt with statutes at all similar to ours is with the conclusion I have reached. When it is conceded that the statute of this State giving a cause of action for the homicide creates a new cause of action separate and distinct from the one which the injured party had in his own behalf at common law, and I understand the majority of the court to so concede, it seems to me that no argument is necessary to show that there can be a recovery in the case upon this new cause of action by the person in whose favor it is vested, notwithstanding the common-law cause of action in favor of the injured party has been released by him in his lifetime. Such a construction of the statute as is given by the court would make the legislature guilty of doing an absurd and vain thing when it enacted the law. When this court reached the conclusion, as it did in the *Bass* case, that the statute providing for suits in cases of homicide created a new cause of action, the present case was in principle decided, and to my mind no argument was needed to establish the soundness of the position for which I now contend. I am authorized by Mr. Justice Lewis to say that he concurs in the views above presented.